In re John A. PACILEO d/b/a Oil City IGA, Debtor.

Vedder J. WHITE, Esq.,
Trustee, Plaintiff,

v.

Joseph A. PACILEO and Mildred L. Pacileo, His Wife, Defendants.

Vedder J. WHITE, Esq.,
Trustee, Plaintiff,

v.

Judith Marie PACILEO, Defendant.

Bankruptcy No. 85–00134E.
Adv. Nos. 85–0082, 85–0093.

United States Bankruptcy Court,
W.D. Pennsylvania.

June 22, 1988.

Vedder J. White, Erie, Pa., Trustee.

Stephen H. Hutzelman, Erie, Pa., for debtor.

Robert C. Brabender, Jr., Erie, Pa., for defendants, Joseph A. and Mildred L. Pacileo.

Dennis V. Williams, Erie, Pa., for defendant, Judith Marie Pacileo.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Issue

The issue is whether a decree of divorce, which ordered that an attached settlement agreement was accepted by the court and incorporated into and made a part of the decree, was sufficient to impose a lien upon the real property of one of the parties to the divorce, so that payment of the debt, for the benefit of the other party to the divorce, created by the settlement agreement, was payment of a valid unavoidable lien, or payment of an unsecured debt and therefore a preference voidable under § 547 of the Bankruptcy Code.

### Facts and Procedure

The debtor filed his bankruptcy petition on April 12, 1985. On February 23, 1983 a decree of divorce was entered in the Court of Common Pleas of Erie County, Pennsylvania, divorcing John A. Pacileo, debtor herein, and Judith M. Pacileo. Attached to the decree of divorce and "incorporated into and made a part of this decree" was a "SEPARATION, CUSTODY, AND PROPERTY SETTLEMENT AGREEMENT" dated January 15, 1983 between the same parties.

At or about the time of the entry of the divorce decree, pursuant to the settlement agreement, John executed a deed unto Judith covering lot "B" and Judith executed unto John a deed covering lot "A"; lot A and lot B together comprised a small shopping plaza known as 1206–08–10–12–14 West 26th Street, Erie, Pennsylvania, also known as Plaza 1210. Plaza 1210, as a whole, was subject to two pre-existing mortgages in favor of Union Bank, executed by both John and Judith in 1977.

The settlement agreement provided that Judith should pay certain debts relative to the Plaza upon which both parties were obligated. The agreement also provided that John would pay in full the two mortgages (in favor of the Union Bank) upon which both John and Judith were obligated, and which covered both lot A and lot B. John's payment would release lot A, which he owned, but it would also release lot B, owned by Judith.

In 1962, John and Judith had executed a mortgage in favor of defendants, Joseph A. Pacileo and Mildred L. Pacileo in the amount of $12,000; that mortgage was secured by a lien on lot B. The terms of the 1983 divorce settlement agreement required John to pay that debt, payment of

which would free lot B, owned by Judith, from the lien of the mortgage.

On February 20, 1985, John sold lot A for $113,300 and from the proceeds paid the following:

| | |
|---|---|
| Union Bank, now by merger, Mellon Bank | $31,424.43 |
| Union Bank, now by merger, Mellon Bank | 11,381.73 |
| Joseph and Mildred Pacileo | 18,750.00 |

The trustee, in his suit against Joseph and Mildred Pacileo, asserts that when John paid them the $18,750 (being the 1962 mortgage principal and interest on lot B), John received no benefit other than the fulfillment of his unsecured settlement agreement with Judith; i.e., that the payment of this debt within 90 days of bankruptcy renders it voidable under § 547.

In his separate suit against Judith Pacileo, the trustee asserts that the payments on February 20, 1985 by John to the Union Bank in the amount of $31,424.43 and $11,-381.73 (a total of $42,806.16) were preferential payments under § 547 of the Bankruptcy Code and should be repaid by Judith. The trustee asserted, alternatively, that said payments were fraudulent conveyances, but that argument was not pursued. At argument, the trustee further argued, in the alternative, that he is entitled to recover one-half of the $42,806.16 as a contribution due from Judith.

### Discussion

■ It is appropriate to set forth in full the pertinent parts of the separation agreement as follows:

"4. *Real Property*.... Such division of the real estate shall be as follows:

The Husband does agree to transfer to the Wife by Quit–Claim Deed his entire right, title and interest in the marital residence known as 6710 Townsend Drive of Fairview Township and does also agree to transfer to the Wife that part of the Plaza by an alleyway and which houses the Peddler Shoppe and at least one additional store [lot "B"]. The Wife in consideration therefore [sic] does agree to transfer to the Husband by Quit–Claim Deed her entire right, title and interest in the balance of the Plaza

[lot "A"]. It is the intention of this paragraph that the Wife shall become the sole and complete owner of the marital residence of 6710 Townsend Drive, Fairview and a portion of the commercial Plaza. The Husband in turn shall become the sole and complete owner of the balance of the said Plaza. Additionally, the Wife does agree to take any and all steps necessary to remove the Husband from the mortgage lien against the residence and any and all obligations which may exist as liens against her business. Additionally, the Husband herein does agree to take any and all steps necessary to remove the Wife herein from the lien obligations against the commercial property known as Plaza 1210."

"9. *Debts*. The parties agree that they have with full understanding of all the debts incurred during the marriage and do agree that they shall be divided as follows:

(a) The Wife shall become fully responsible for any debt incurred by her solely in her name or in both names since the date of the separation.

(b) The Husband shall become fully responsible for any debt that he incurred in his name alone or in the name of both parties since the date of the separation.

(c) The Wife shall become solely responsible for the mortgage of an approximate amount of $17,200.00, which exists as a lien against the personal residence and a business loan obtained for the sole benefit of the Peddler Shoppe, which has a present amount of approximately $19,-500.00 and a home improvement loan which has a present balance of $2,800.00.

(d) Additionally, the Wife agrees to pay all delinquent taxes which are presently the joint obligation of the parties and approximately $13,000.00. (Being all 1981 & 1982 taxes, penalties & interest on the Plaza.)

(e) The Husband does agree that he shall become solely and completely responsible for two loan obligations incurred for the benefit of the Green Grocer in an approximate present amount of $37,832.00 and $13,269.00 and, a loan ob-

tained from his father in the approximate amount of $8,000 and, three additional obligations incurred by or on behalf of the Green Grocer to Shenango for $2,000.00, an electric bill of $1,000.00 and a Times Publishing obligation of $2,700.00. And, the Husband herein does agree that he shall be solely and completely responsible for any other obligations related to the Green Grocer.

(f) With reference to these debts and obligations, each party does agree to take any and all steps necessary to remove as an obligated party the other party herein and, if such cannot be accomplished, then to totally and completely hold the other party harmless for such obligation and stand in their stead should any action be taken against the other party.

(e) [sic] The parties herein agree not to incur any further obligations in the name of the other party from the date of the signing of this Agreement."

If the above language constitutes a judgment, or a charge, or a lien upon the real estate of the debtor, particularly lot A, then the payments to Joseph and Mildred Pacileo and to (or for the benefit of) Judith Pacileo were payments on secured indebtedness. However, if such language does not rise to the level of a lien, then the payments were payments of unsecured indebtedness, within three months of the bankruptcy filing, and would be preferences, all of the other elements of a preference under § 547 having been met and there being no dispute with respect thereto.

More particularly, Joseph and Mildred Pacileo held a mortgage on lot B, which was owned by Judith. John paid that indebtedness within three months of the bankruptcy. It was his obligation to do so under the marital agreement. However, as against John, that was an unsecured indebtedness, unless the language of the settlement agreement, attached to, incorporated in, and made a part of the divorce decree, constituted a lien upon John's real estate, known as lot A.

Also, John's payment of the two mortgages to the Union Bank on February 20, 1985, were payments of secured claims. However, they were claims which were secured by both the debtor's property and Judith's property and the mortgage which was paid was a mortgage upon which the obligors were both John and Judith. John had two obligations which were satisfied by his payment to the Union Bank. One was his marital settlement obligation to Judith, which was an unsecured claim, unless the divorce decree constituted a lien. The other was the liened indebtedness upon which Judith was also an obligor, and which indebtedness was also secured by a mortgage lien upon Judith's property.

Defendants rely upon 42 Pa.C.S.A. Section 4303(a) which provides:

"(a) *Real Property.* Any judgment or other order of a court of common pleas for the payment of money shall be a lien upon real property on the conditions, to the extent and with the priority provided by statute or prescribed by general rule adopted pursuant to section 1722(b) (relating to enforcement and effect of orders and process) when it is entered of record and indexed in the office of the clerk of the court of common pleas of the county where the real property is situated, or in the office of the clerk of the branch of the court of common pleas embracing such county."

Defendants argue that the divorce decree with the settlement agreement attached constitutes an "order of the court of common pleas for the payment of money". Defendants further argue that any execution creditor or any good faith purchaser is bound with notice of all that he would ascertain from examination of the record in the divorce proceeding and that if anything in that record shows that either party owes any money or any obligation to any other party, that obligation is a lien upon such party's real estate. No cases are cited.

If defendants are to prevail, the language of ¶ 9(e) must constitute an order of court against the husband for the payment of money. The first sentence of ¶ 9(e) provides:

"(e) The Husband does agree that he shall become solely and completely re-

sponsible for two loan obligations incurred for the benefit of the Green Grocer in an approximate present amount of $37,832.00 and $13,269.00 and, a loan obtained from his father in the approximate amount of $8,000 and, three additional obligations incurred by or on behalf of the Green Grocer to Shenango for $2,000.00, an electric bill of $1,000.00 and a Times Publishing obligation of $2,700.00.''

We assume that the "$37,832.00" refers to the mortgage debt to Union Bank, paid on February 20, 1985 in the amount of $31,-424.43. We assume that the "$13,269.00" refers to the mortgage debt to Union Bank, paid on February 20, 1985 in the amount of $11,381.73. We assume that the reference to "a loan obtained from his father in the approximate amount of $8,000" refers to the mortgage debt to Joseph and Mildred Pacileo, paid on February 20, 1985 in the amount of $18,750. Such *assumptions* are necessary because the names of the mortgagees are not disclosed in ¶ 9, and the amounts are shown only in approximate figures.

The court finds that the parties did not intend that attachment of the settlement agreement to the divorce decree would create a lien, and that in the event enforcement action might be required in the future, the additional detail could be provided at that time. This is evidenced by the fact that the names of the obligees are not stated, nor is there any identification of the mortgages which secured the debts in question. The obligation of the husband is not plainly stated as a debt to the wife, but rather as an obligation to pay debts, generally described, which were "incurred for the benefit of the Green Grocer". While the loose language of the Settlement Agreement may be the foundation of a suit to enforce the understanding between the parties, or be sufficient to create a cloud on the husband's title, it is insufficient to constitute a lien on the husband's real estate to secure performance.

We also note ¶ 4 of the settlement agreement which clearly implies that further steps were anticipated to be necessary, and which the obligated party must perform, in order to relieve the obligee party of further risk. Under ¶ 4, deeds were to be drafted, executed, acknowledged, delivered and recorded; each party was to obtain the release of the other from certain mortgage obligations to third parties.

The trustee refers us to the Pennsylvania Divorce Code, Section 401(g) which provides:

"The court may impose a lien or charge upon the marital property assigned to a party as security for the payment of alimony or other award for the other party."

This makes it clear that the court may impose a lien or charge to secure performance of a divorce decree. In the case at bench, there is no language in the decree or the settlement agreement imposing a lien or charge upon any property.

The court therefore concludes that a divorce decree, alone or with a settlement agreement attached and incorporated therein, may result in a lien or specifically impose a lien upon property of a party thereto, but that the Pacileo divorce decree does not do so.

This court finds that, to the extent of the payments made by John Pacileo on February 20, 1985, such payments were payments of unsecured indebtedness and were therefore preferences.

However, John's payment to the Union Bank of $42,806.16 was payment of both his indebtedness and Judith's indebtedness. Such payment relieved John's property of the liened indebtedness, but it also relieved Judith's property and, therefore, being a joint debt, John's trustee in bankruptcy is entitled to contribution in the amount of one-half of the amount paid. *Goldberg v. Altman*, 190 Pa.Super. 495, 154 A.2d 279 (1959). The transfer by John to the Union Bank was a transfer under § 547(b)(1) "for the benefit of a creditor". Judith was clearly benefitted by that transfer and the transfer falls within the plain language of § 547.

### Conclusion

For the foregoing reasons, the court will enter an order for judgment in favor of the

trustee and against Joseph A. and Mildred L. Pacileo in the amount of $18,750 and a judgment in favor of the trustee and against Judith Marie Pacileo in the amount of $21,403.08.