**In re STEVEN P. NELSON, D.C., P.A. Debtor.**

**STEVEN P. NELSON, D.C., P.A. Plaintiff,**

**v.**

**GENERAL ELECTRIC CAPITAL CORPORATION, a New York corporation, Southeast Bank Leasing Corporation, a Florida corporation, Posilease Financial, Inc., a Pennsylvania corporation, Copelco Leasing Corporation, a New Jersey corporation, and Fleet Credit Corporation, a Rhode Island corporation, Defendants.**

**Bankruptcy No. 92–1122–8P1.
Adv. No. 92–209.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 24, 1992.

Domenic L. Massari, III, Tampa, Fla., for plaintiff.

Larry Foyle, Tampa, Fla., for General Elec. Capital Corp.

Paul D. Friedman and Donna Riven, Miami, Fla., for Southeast Bank Leasing Co.

Laura L. Brogan, for Polilease Financial, Inc.

Richard S. Wright, Orlando, Fla., for Copelco Leasing Corp.

Howard S. Toland, Fort Lauderdale, Fla., for Fleet Credit Corp.

Joel A. Goodman, Boston, Mass.

Joseph N. Perlman, Largo, Fla., U.S. Trustee.

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Motion filed by Steven P. Nelson, D.C., P.A., (Debtor), seeking the issuance of a preliminary injunction to prohibit General Electric Capital Corporation (GECC), Southeast Bank Leasing Corporation (Southeast), Posilease Financial, Inc. (Posilease), Copelco Leasing Corporation (Copelco) and Fleet Finance Corporation (Fleet) (collectively referred to as the Defendants) from proceeding with pending state court suits against Steven P. Nelson (Nelson), individually, to enforce his guarantees of the obligations owed by the Debtor. The Motion is based on 11 U.S.C. § 105(a) and filed pursuant to Rule 65 of the Federal Rules of Civil Procedure as adopted by F.R.B.P. 7065. This Court has heard argument of counsel for the parties, considered the Motion, together with the record and now finds that the facts relevant to the matter under consideration are as follows:

The Debtor is a Professional Association (P.A.) which operates a chiropractic clinic located in Clearwater, Florida, and has been in business for eight years. It currently has eight employees and four independent contractors. The practice services approximately 3,300 patients in the Tampa Bay area, and regularly treats between 50 to 55 patients per day. Nelson is the president, 100% shareholder and sole executive of the Debtor. He is also the sole chiropractic physician responsible for the management and operation of the Debtor's business. It is his responsibility to supervise the Debtor's employees. Without question, Nelson is the only employee or officer of the Debtor capable of managing the business of the Debtor and the only person who could propose a meaningful plan of reorganization of the Debtor's affairs.

The current difficulties of the Debtor relate to several equipment leases the Debtor entered into with GECC, Southeast and Posilease. These leases were personally guaranteed by Nelson. In addition, another corporation in which Nelson is an officer and shareholder, Stress Simulations, Inc., d/b/a 3-S Corporation (3-S), entered into equipment leases with Copelco and Fleet, the other Defendants. Copelco and Fleet claim that Nelson also guaranteed the 3-S obligations under their leases, although Nelson claims that the signatures

on the guarantees are not his, but forgeries.

Both the Debtor and 3–S ultimately defaulted under the leases. The Defendants commenced actions to enforce the Debtor's and 3–S' obligations under the leases and also sued Nelson to enforce his guarantees. On January 29, 1992, the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code. 3–S is also a Chapter 11 debtor in this Court. By virtue of the automatic stay, the litigation against the Debtor and 3–S came to a halt, but the Defendants continued to pursue their claims against Nelson. As a result, on March 11, 1992, the Debtor filed its Complaint seeking injunctive relief and the Motion presently under consideration.

The Debtor contends that if Nelson is unable to obtain protection from this Court, he will not be able to devote sufficient time to put together a plan of reorganization for the Debtor, and this Debtor's chance to achieve rehabilitation under Chapter 11 of the Bankruptcy Code will be put in serious jeopardy. The Debtor also claims that protection of Nelson's assets is crucial to the Debtor's reorganization efforts, as the Debtor's plan will be funded in part by a $100,000 cash infusion by Nelson. Nelson claims to spend between 15–20 hours per week defending against these lawsuits, which has caused the Debtor to lose patients. The Debtor was compelled to employ additional chiropractic physicians to treat patients due to Nelson's unavailability to attend to patients at the clinic. According to Nelson, this in turn has resulted in a loss to the Debtor of between $50,000 and $60,000 over the past four months.

Section 105(a) of the Bankruptcy Code empowers this Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). It no longer can be gainsaid that bankruptcy courts have the authority to grant injunctive relief and to enjoin proceedings against non-debtors that would materially impact a debtor's effort to reorganize. There is considerable case authority supporting the use of § 105(a) as a means of providing this protection to non-debtors such as individual guarantors and key officers of a debtor corporation. See, e.g., American Hardwoods Inc v. Deutsch Credit Corp. (In re American Hardwoods Inc.), 885 F.2d 621 (9th Cir.1989); Noel Manufacturing Co. Inc. v. Marathon Manufacturing Co., 69 B.R. 120 (N.D.Ala.1985); In re Hillsborough Holdings Corp., 123 B.R. 1004 (Bankr.M.D.Fla.1990); Kasual Kreation, Inc. v. Heller Financial, Inc. (In re Kasual Kreation, Inc.), 54 B.R. 915 (Bankr. S.D.Fla.1985); St. Petersburg Hotel Associates, Ltd. v. Royal Trust Bank of St. Petersburg (In re St. Petersburg Hotel Associates, Ltd.), 37 B.R. 380 (Bankr. M.D.Fla.1984); Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.), 21 B.R. 777 (Bankr.D.N.M.), aff'd, 25 B.R. 1018 (D.C.D.N.M.1982).

It is well established that a preliminary injunction is an extraordinary and drastic remedy which may be granted only upon a clear and convincing showing that the movant has carried its heavy burden on each element under F.R.B.P. 7065. In re Costa and Head Land Company, 68 B.R. 296, 304 (Bankr.N.D.Ala.1986) (citing In re Anje Jewelry Co., Inc., 47 B.R. 485, 487 (Bankr.E.D.N.Y.1983)). In order to obtain the relief sought, the Debtor must show with requisite degree of proof: (1) a substantial likelihood of success on the merits; (2) that the movant will suffer irreparable injury unless an injunction issues; (3) that the threatened injury to the movant outweighs any damage the injunction may cause the opposing party; and (4) that the injunction would not adversely affect the public interest. See Zardui–Quintana v. Richard, 768 F.2d 1213, 1216 (11th Cir. 1985); Calaway v. Block, 763 F.2d 1283, 1287 (11th Cir.1985).

In the context of the relief sought by the Debtor, the likelihood of success on the merits has been defined by numerous courts as the probability of a successful reorganization. This Chapter 11 case is still in an embryonic stage and it is clearly unreasonable to require the Debtor at this early stage of the case to make detailed projections of the terms or anticipated feasibility of its plan of reorganization. Gath-

*ering Restaurant, Inc. v. First National Bank of Valparaiso (In re Gathering Restaurant, Inc.),* 79 B.R. 992, 998 (Bankr. N.D.Ind.1986); *Lahman Mfg. Co., Inc. v. First National Bank of Aberdeen (In re Lahman . Mfg. Co., Inc.),* 33 B.R. 681 (Bankr.D.S.1983). In this connection, it should be noted that there is nothing in the record to indicate that the Debtor will not be able to successfully reorganize.

Next, the Debtor did meet its burden of proving that it will suffer irreparable injury in the event the relief sought is denied and the Defendants are permitted to proceed with the State Court actions against Nelson, thereby not only diverting his personal efforts to manage the affairs of the Debtor, but also depriving him of precious time to work toward the preparation of the Disclosure Statement and the Plan of Reorganization. It is abundantly clear that should Nelson be required to continue to expend his individual energies and funds in defending these numerous lawsuits, his ability to contribute to the Debtor's reorganization will drastically diminish.

The balance of equities in this instance is also in favor of the Debtor. The Court is satisfied that the interest in preventing imminent and continuing injury to the Debtor if the State Court litigation is permitted to continue against Nelson would far outweigh the harm which might be visited on the Defendants if they are temporarily prohibited to prosecute their suits in the State Court against Nelson based on his guarantee of the primary obligations of the Debtor and 3–S. Nelson's services, expertise, knowledge and attention to the affairs of the Debtor are vital components of the Debtor's economic survival and of the ultimate success in this Chapter 11 case. Finally, this Court is satisfied that the public interest is better served by the Debtor's reorganization rather than by its possible liquidation should this Court refuse to issue an injunction.

For these reasons, this Court will issue an injunction, albeit limited to a period of two months. During this period, Nelson should have sufficient time to concentrate

on this Debtor's reorganization and propose a plan of reorganization.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Preliminary Injunction is hereby granted, and the Defendants are enjoined from continuing to prosecute any lawsuits against Nelson for a period of two months from the date of the entry of this Order.

DONE AND ORDERED.