**In re ST. PETERSBURG HARBOUR-VIEW HOTEL CORP. d/b/a The St. Petersburg Hilton, Debtor.**

**ST. PETERSBURG HARBOURVIEW HOTEL CORP. d/b/a The St. Petersburg Hilton, Plaintiff,**

v.

**FIRST UNION NATIONAL BANK OF FLORIDA, Defendant.**

**Bankruptcy No. 94–2014–8P1.**

**Adv. No. 94–138.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 5, 1994.

Charles M. Tatelbaum, for plaintiff.

Robert B. Glenn, for defendant.

Robert M. Coplen, for Resolution Trust Corp.

William P. Smith, for Bondholders.

## ORDER EXTENDING INJUNCTIVE RELIEF

ALEXANDER L. PASKAY, Chief Judge.

THIS CASE involves St. Petersburg Harbourview Hotel Corp. d/b/a The Hilton (Debtor) who filed its Petition for Relief under Chapter 11 of the Bankruptcy Code on March 3, 1994. On the same day the Debtor also filed its Complaint in which it sought injunctive relief against First Union National Bank of Florida (Bank) who was, at the time of the commencement of this case, already involved in a prolonged litigation in the Circuit Court of Pinellas County against the Debtor and others, including Sheraton Sand Key, Ltd. (SSK), the entity sought to be protected by the Debtor. In conjunction with this Complaint, the Debtor also filed a Motion for Temporary Restraining Order or in the Alternative for Preliminary Injunction against the Bank prohibiting the Bank to proceed any further against SSK. The Debtor's Motion for Temporary Restraining Order was heard with notice to the Bank, at the conclusion of which this Court issued a Temporary Restraining Order and scheduled an evidentiary hearing to consider whether to extend or terminate the injunction. At the duly scheduled evidentiary hearing the following facts relevant to the resolution of the relief sought are as follows:

The Debtor is the owner and operator of a large hotel facility located in downtown St. Petersburg operating under the Hilton franchise. The property is currently encumbered by a first mortgage held by the Bondholders represented by the Bank who acts as the Indenture Trustee under the Bond issue, securing a debt of approximately $12 million; a second mortgage held by RTC with a balance of $1.9 million; a third mortgage with a balance of $3.6 million held by the City of St. Petersburg; and a fourth mortgage held by T. Gene Prescott (Prescott) securing a debt of $1 million. The furniture, fixtures and equipment of the hotel are subject to a first lien of RTC and a second lien held by the Bank. The Debtor is a corporation and is the wholly-owned subsidiary of Seaway Hotel Corporation (Seaway) who is in turn a wholly-owned subsidiary of a corporation known as U.C.E.L.A. in which Mr. Prescott is 100%

stockholder. Seaway is also a general partner of SSK, the owner and operator of a large hotel facility on Sand Key on Clearwater Beach and is operated under a Sheraton franchise and not a debtor involved under any Chapter of the Bankruptcy Code.

It further appears that the Debtor filed a Plan of Reorganization on March 30, 1994 and a Disclosure Statement on April 5, 1994. The Plan of Reorganization is proposed to be funded by a refinancing arrangement involving both the Debtor and SSK and planned to be structured as follows: the Debtor and SSK jointly seek to obtain a loan in the approximate amount of $26.5 million; out of this loan the Debtor will receive $5 million, SSK approximately $20 million, Mr. Prescott will infuse $1 million equity investment and the Debtor will have available $500,000 derived from operating cash surplus. It is contemplated that out of the monies obtained, approximately $20 million would be used to refinance the current secured indebtedness of SSK and $5 million will be used to fund the plan of reorganization of the Debtor. The record further reveals that the Debtor does not have a firm commitment from any lender nor does it have a binding legal commitment from SSK to participate in the proposed refinancing and assist the Debtor to procure the funds necessary to effectuate a reorganization of the Debtor.

Based on the foregoing the Debtor contends that the financing necessary to effectuate a successful reorganization and SSK's participation in this proposed refinancing is indispensable in that the Debtor is unable to reorganize by itself and without SSK's participation its efforts to reorganize is doomed. This participation according to the Debtor would be frustrated and in fact rendered impossible if the Bank is permitted to proceed in the State Court and obtain a judgment against SSK since no lender would seriously consider a loan to SSK if there is an outstanding unsatisfied judgment on record against it. In order to furnish additional support to the relief sought, the Debtor points out, as noted earlier, that it already filed its Plan of Reorganization even though the exclusivity granted by § 1121(b) to debtors will not expire until July 3, 1994 and concedes that unless it obtained confirmation of its Plan by the first of June, it will give up

any further attempts to seek protection of this Court.

In opposing the relief sought, the Bank contends that in light of the fact that SSK is not a stockholder nor a creditor of the Debtor and has no firm legal obligation to participate as co-borrower in this proposed refinancing, it has no right to any injunctive protection. This is so, according to the Bank, because the courts which recognized in the past the bankruptcy court's power under § 105 of the Bankruptcy Code to grant injunctive relief protecting non-debtors were based on facts not present here thus not controlling in the present instance. In this connection the Bank points out this Court's decision in the case of *Matter of St. Petersburg Hotel Associates, Ltd.,* 37 B.R. 380 (Bankr.M.D.Fla.1984) which parenthetically involved the very same hotel, under different ownership, in the early 1980s. The injunction was issued to protect Darrell Wild, a general partner of the Debtor, and his wife. Also, in the case of *In re Otero Mills, Inc.,* 25 B.R. 1018 (D.C.N.M.1982), the New Mexico District Court on appeal held that it was proper to prohibit the bank to proceed against Charles Dugan, the president of the Debtor, because a failure to enjoin would affect the estate and would adversely and detrimentally influence and pressure the Debtor. Equally, the injunctive relief granted in *Matter of Old Orchard Inv. Co.,* 31 B.R. 599 (D.C.Mich.1983) involved an injunction protecting the partners of a debtor partnership. See also *In re Myerson & Kuhn,* 121 B.R. 145 (Bankr.S.D.N.Y.1990) (injunction protecting partners of a professional association). Thus, according to the Bank, while the power to grant injunctive relief pursuant to § 105 may be exercised under special circumstances, i.e. to temporarily protect the principal of the debtor against pending litigation, it is only warranted if it is necessary to enable the principal to devote his full time to the affairs of the Debtor including the preparation of reorganization, e.g. *In re Steven P. Nelson, D.C., P.A.,* 140 B.R. 814 (Bankr. M.D.Fla.1992) (a chiropractor in a professional association) or to preserve the principal's ability to use his credit to procure the necessary funds to fund the reorganization, *Matter of St. Petersburg Hotel Associates, Ltd., supra,* and when the principals are entitled to be indemnified pursuant to an indemnification agreement with the Debtor pursuant to which the Debtor has a legal obligation to hold harmless the principal in the event they are sued and suffer a judgment based on a conduct while acting as officer or director of the principal. *In re Lazarus Burman Associates,* 161 B.R. 891 (Bankr.E.D.N.Y.1993). This is not the case in this instance. This is so because the entity sought to be protected, SSK, is not an officer, director or stockholder of the Debtor and is not involved at all in the operation of the hotel of the Debtor or in the management of the affairs of the Debtor and is really is basically nothing more than a possible prospective lender and there is no authority which would support injunctive relief under these circumstances.

A simplistic view of this fact pattern developed in this instance as described earlier would certainly easily lead to the conclusion that the Bank is correct and it would not be appropriate to grant the relief sought. However, a closer analysis of the total picture leaves no doubt that the fact pattern established does not warrant adoption of this conclusion. This is so because of the intimate involvement of the Debtor in the overall corporate structure and its interconnection with Seaway, the parent of the Debtor and with SSK, the only entity which appears to be able to negotiate and obtain the loan needed for the refinancing and in turn furnish the funds necessary for a successful reorganization by the Debtor. Thus, while the connection is not direct between the Debtor and SSK, unlike the connection of the principals who were protected in the cases cited, it is still meaningful because the entire scheme of reorganization apparently depends on SSK's willingness to participate as a borrower in the refinancing of the Debtor's financial affairs.

This leads to the ultimate question whether or not it is appropriate to grant the injunctive relief sought by the Debtor under the applicable principles governing injunctive relief in general. It is now well established that injunctive relief is an extraordinary remedy should not be granted unless the party seeking the relief establishes, with the requisite degree of proof, the following:

(1) likelihood of success;

(2) irreparable harm if the relief is not granted;

(3) the corresponding detriment visited upon the party; and

(4) granting the injunction would serve the public interest. *Snook v. Trust Co. of Georgia Bank, N.A.,* 909 F.2d 480 (11th Cir.1990); *Otero, supra.*

Considering briefly the four factors outlined above, the likelihood of success in the context of a Chapter 11 reorganization case is the Debtor's ability to obtain confirmation of its plan of reorganization. This record leaves no doubt that this Chapter 11 case is still in the embryonic stages; that the Debtor has already filed its plan of reorganization and its disclosure statement; that the entire reorganization process is placed on a fast track; and, the relief sought, if granted, will be of short duration. Whether or not the Debtor will be able to achieve confirmation, of course, remains to be seen. It is evident, however, that it is premature to pass judgment on this question. This Debtor certainly should be given an opportunity to achieve reorganization and it is too early and premature to consider whether the Plan which is already filed is or is not feasible.

The second element that the Debtor will suffer irreparable harm has been demonstrated and this Court is satisfied that the Debtor will not be able to obtain the necessary financing without the participation of SSK. It is equally clear that if SSK suffers a money judgment, this would clearly impair its ability to play any role in any refinancing. On the other hand, the detriment visited upon the Bank is minimal since its suit has been pending for two years, while vigorously litigated, and two or three months delay certainly would not create an extreme hardship. Lastly, the public interest would clearly be served by granting the injunctive relief by saving an on-going economic enterprise by preserving going concern value by saving numerous jobs and also an on-going commercial relationship the Debtor has with its several vendors. In sum, based on the foregoing, this Court is satisfied that the injunctive relief heretofore granted should be extended pending the speedy resolution of the reorganization process.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Temporary Restraining Order or in the Alternative for Preliminary Injunction against the Bank be, and the same is hereby, granted and First Union National Bank of Florida is hereby prohibited and restrained from proceeding or undertaking any steps, direct or indirect, toward obtaining a final judgment against Sheraton Sand Key, Ltd. provided the Debtor obtains confirmation of its Plan by June 30, 1994, and further provided that Sheraton Sand Key, Ltd. and Seaway Hotel Corporation furnish to this Court 30 days prior to the first date set for confirmation proof of the commitment of funds sufficient to fund the Plan of Reorganization. It is further

ORDERED, ADJUDGED AND DECREED that in the event the Debtor or Sheraton Sand Key, Ltd. or Seaway Hotel Corporation are unable to meet these conditions, the injunction shall be deemed to be dissolved forthwith and First Union National Bank of Florida will be authorized to proceed in the state court to seek final judgment against Sheraton Sand Key, Ltd.

DONE AND ORDERED.