

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-11-1997

# McCartney v. Integra Natl Bank N

Precedential or Non-Precedential:

Docket 96-3023

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"McCartney v. Integra Natl Bank N" (1997). *1997 Decisions.* Paper 36.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/36

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 96-3023

———————

LAMAR A. MCCARTNEY,

Appellant

v.

INTEGRA NATIONAL BANK NORTH,
Successor to McDOWELL NATIONAL BANK;
GARY J. GAERTNER, U.S. TRUSTEE

Appellee

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 94-cv-00984)

———————

Argued October 24, 1996

BEFORE: STAPLETON and NYGAARD, CIRCUIT JUDGES AND
MAZZONE, District Judge*

(Opinion Filed February 11, 1997)

Donald R. Calaiaro (Argued)
Calaiaro, Corbett and Bower
1105 Grant Building
Pittsburgh, Pa.  15219

Counsel for Appellant


P. Raymond Bartholomew (Argued)
701 North Hermitage Road
Hermitage, Pa.  16148

Counsel for Appellee Integra
National Bank, Sucessor to McDowell
National Bank

William F. Pineo
764 Park Drive

1

P.O. Box 598
Meadville, Pa. 16335

Counsel for Chapter 7 Trustee
For McCartney

* The Honorable A. David Mazzone, Senior District Judge for the District of Massachusetts sitting by designation.

Nygaard, Circuit Judge:

The district court affirmed a bankruptcy court's order denying a motion for summary judgment on an objection debtor-appellant Lamar McCartney filed to Integra National Bank's proof of claim. McCartney argues on appeal that the bankruptcy court erred by not discharging the debt he owes to Integra. We will affirm.

I.

The facts are undisputed. On September 26, 1989, Integra loaned $80,000 to Lamar's Restaurant & Lounge, Inc., which was guaranteed by the Small Business Administration. As security for the loan, Lamar's granted Integra a first mortgage on Lamar's corporate property. McCartney guaranteed the loan to Lamar's by granting Integra a second mortgage lien on land owned by him individually.

In May 1992, McCartney filed a voluntary petition under Chapter 13 of the Bankruptcy Code. He then filed a motion to sell Lamar's corporate property. At the conclusion of the sale hearing, McCartney's Amended Plan for Reorganization was adopted as an Interim Plan, pending a status report. The parties and the court agreed at the sale hearing that Integra, acting with the

2

SBA, would put Lamar's corporate property through a sheriff's sale to determine what deficiency, if any, McCartney, as guarantor of Lamar's loan, owed to Integra.

Fearing that the sheriff's sale would not occur until after the bar date in McCartney's bankruptcy proceeding, Integra filed Proof of Claim No. 6 in the amount of $38,564.66 against McCartney's individual property pledged as collateral for Lamar's loan. The state court subsequently sold Lamar's corporate property. Integra purchased Lamar's corporate property at the sale for costs and taxes. Integra then resold the property and agreed to modify its proof of claim to show a deficiency of $29,638.14 plus interest and attorney's fees.

Almost ten months later, McCartney filed an objection to Integra's proof of claim, asserting that Integra's claim on Lamar's underlying debt was satisfied as a matter of law because Integra failed to file a petition to fix the fair market value of the property within six months of the sheriff's sale as required under the Pennsylvania Deficiency Judgment Act, 42 Pa.C.S.A. § 8103. Both parties filed cross-motions for summary judgment, which the bankruptcy court denied.[1]

---

[1] On April 12, 1994, the bankruptcy court heard argument on the valuation of Lamar's property sold at the sheriff's sale. On May 3, 1994, the court determined that the value of the Lamar's property was $20,000 and directed Integra to recalculate its deficiency claim based on this value. On July 20, 1994, the bankruptcy court converted the Debtor's Chapter 13 case to a Chapter 7 case. Since then, the Chapter 7 Trustee has sold some of McCartney's other property and applied the net proceeds to the debt owed to Integra. As a result, it appears that the balance due Integra has been reduced to $4,379.88 plus interest and additional attorney's fees.

On appeal, McCartney asserts that the bankruptcy court erred by concluding that the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, precluded Integra from complying with the requirements of the DJA. More specifically, McCartney maintains that the automatic stay applies only to actions commenced against McCartney himself, and therefore, the stay imposed in his bankruptcy did not prevent Integra from seeking a deficiency judgment against Lamar's within the time permitted under the DJA. Since Integra failed to file a petition in state court to fix the fair market value of Lamar's corporate property within six months of the sheriff's sale, McCartney argues, Integra's claim against Lamar's is deemed released and satisfied as a matter of law. As a consequence, McCartney contends that he, as guarantor, is also discharged from any deficiency remaining on Integra's loan to Lamar's. Thus, McCartney concludes, Proof of Claim No. 6 filed by Integra in his bankruptcy should be stricken.

## III.

Under Pennsylvania law, every judgment creditor who forces real estate to be sold in an execution sale must comply with the DJA to protect its claim to any unpaid balance remaining after the sale. 42 Pa.C.S.A. § 8103. Under the DJA, the judgment creditor has six months after the debtor's collateral is sold in which to petition the court to fix the fair market value of the real property. 42 Pa.C.S.A. § 5522(b). Failure to file a petition within this time period "creates an irrebuttable presumption that the creditor was paid in full in kind." Valley

4

<u>Trust Co. of Palmyra v. Lapitsky</u>, 488 A.2d 608, 611 (Pa. Super. Ct. 1985). This presumption serves to discharge all parties either directly or indirectly liable to the judgment creditor for payment of the debt, including guarantors. 42 Pa.C.S.A. § 8103(d); <u>see</u> <u>also</u> <u>Commonwealth Bank and Trust Co. v. Hemsley</u>, 577 A.2d 627, 631 (Pa. Super. Ct.), <u>alloc.</u> <u>denied</u>, 583 A.2d 793 (Pa. 1990).

Significantly, to comply with the requirements of the DJA, the judgment creditor must either (1) name in the petition, or (2) give notice to, any "debtor, obligor, guarantor, mortgagor, and any other person directly or indirectly liable to the judgment creditor for the payment of the debt." 42 Pa.C.S.A. §8103(b). Default on this notice requirement discharges all personal liability to the judgment creditor for parties neither served with notice nor named in the petition. <u>Id.</u>

It is undisputed that Integra has never filed a petition in state court to fix the fair market value of Lamar's property sold at the sheriff's sale. Under normal circumstances, failing to file a petition would discharge whatever remaining debt Lamar's owed to Integra. Moreover, Integra's failure to meet the statutory requirements of the DJA would also normally discharge McCartney's guarantee of Lamar's debt because, as a matter of law, there is no underlying debt owing to Integra.

This case, however, does not present a normal situation where the DJA can be applied by its literal terms. As the bankruptcy court rightly noted, when McCartney filed for bankruptcy, the automatic stay provision of 11 U.S.C. § 362(a)

5

was triggered and effectively precluded Integra from state court actions of any type against McCartney. Consequently, McCartney cannot use Integra's failure to comply with the DJA to avoid the proof of claim Integra filed against him.

> Section 362(a) of the Code operates to stay ... (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1) (1996). The automatic stay serves several purposes. The stay gives a debtor a breathing spell from creditors by stopping all collection efforts and all foreclosure actions. Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991) (citation omitted). In this respect, the stay permits the debtor to attempt a repayment or reorganization plan; or it simply relieves the debtor of the financial pressures that drove him into bankruptcy. Id. at 1204. The stay also protects creditors by preventing particular creditors from acting unilaterally to obtain payment from a debtor to the detriment of other creditors. Id. (citation omitted).

Although the scope of the automatic stay is broad, the clear language of section 362(a) stays actions only against a "debtor." Id. (citing Association Of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982)). As a consequence, "[i]t is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by

6

entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor." Id. at 1205 (quoting Lynch v. Johns-Manville Sales Corp., 710 F.2d 1194, 1196-97 (6th Cir. 1983)); see also United States v. Dos Cabezas Corp., 995 F.2d 1486, 1491-93 (9th Cir. 1993) (holding that stay does not preclude government from pursuing deficiency judgment against nondebtor cosignors of promissory note); Croyden Associates v. Alleco, Inc., 969 F.2d 675, 677 (8th Cir. 1992) (refusing to extend stay to claims against solvent codefendants), cert. denied sub nom, Harry and Jeanette Weinberg Foundation, Inc. v. Croyden Associates, 507 U.S. 908 (1993); Credit Alliance Corp. v. Williams, 851 F.2d 119, 121-22 (4th Cir. 1988) (enforcing a default judgment entered against a nondebtor guarantor of a note during the pendency of the corporate obligor's bankruptcy). As one court has reasoned, a primary rationale for refusing to extend the automatic stay to nonbankrupt third parties is to insure that creditors obtain "the protection they sought and received when they required a third party to guaranty the debt." Credit Alliance, 851 F.2d at 121; accord In re F.T.L., Inc., 152 B.R. 61, 63 (Bankr. E. D. Va. 1993).

This prohibition, however, has been liberalized in a number of cases where courts have applied the automatic stay protection to nondebtor third parties. Relying on A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir.), cert. denied, 479 U.S. 876 (1986), these courts have extended the automatic stay to nonbankrupt codefendants in "unusual circumstances." As the case

7

law demonstrates, courts have found "unusual circumstances" where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." Id. at 999 (relying on both the automatic stay provision and the bankruptcy court's equitable powers under 11 U.S.C. § 105 to enjoin actions against nondebtor codefendants in the Dalkon Shield products liability litigation because of the potential impact on the estate and the availability of insurance proceeds to satisfy the claims); see also, In re American Film Technologies, Inc., 175 B.R. 847, 855 (Bankr. D. Del. 1994) (staying prosecution of wrongful discharge claims against former and present directors of debtor corporation because of debtor's indemnification obligations and its possible exposure to collateral estoppel prejudice); In re Family Health Services, Inc., 105 B.R. 937, 942-43 (Bankr. C. D. Cal. 1989) (staying collection actions against nondebtor members of debtor HMO because judgments against nondebtors would trigger claims for indemnification from the debtor HMO).

Courts have also extended the stay to nondebtor third parties where stay protection is essential to the debtor's efforts of reorganization. See, e.g., In re Lazarus Burman Associates, 161 B.R. 891, 899-900 (Bankr. E. D. N.Y. 1993) (enjoining guaranty actions against nondebtor principals of debtor partnerships because principals were the only persons who could effectively formulate, fund, and carry out debtors' plans

of reorganization); <u>In re Steven P. Nelson</u>, 140 B.R. 814, 816–17 (Bankr. M. D. Fla. 1992) (enjoining actions against nondebtor guarantor of debtor corporation's obligations where guarantor was president of debtor and president's services, expertise and attention were essential to the reorganization of the debtor); <u>see</u> <u>also</u>, Paul H. Deutch, <u>Expanding The Automatic Stay:</u> <u>Protecting Nondebtors In Single Asset Bankruptcies</u>, 2 Am. Bankr. Inst. L. Rev. 453 (1994).

Here, McCartney argues that the automatic stay only applied to him in his individual capacity, not to Lamar's. As such, he maintains that Integra was not stayed from pursuing a deficiency judgment in state court against Lamar's, as required under the DJA. In response, Integra concedes that under normal circumstances the automatic stay does not preclude creditors from pursuing their right to payment from nondebtor third parties. Indeed, Integra notes that, acting in compliance with this general rule, it pursued Lamar's to foreclosure and sheriff's sale. However, Integra asserts that it could not have proceeded any further against Lamar's to obtain a deficiency judgment because it would have been required under the terms of the DJA to name McCartney as a respondent in the petition and thereby violate the automatic stay protecting him. The bankruptcy court found Integra's argument to be persuasive and reasoned that permitting Integra to name McCartney in a deficiency judgment action in state court at the same time that his bankruptcy case was pending would defeat the purpose of § 362 to centralize all prebankruptcy civil claims against a debtor in the bankruptcy

9

court.  In re McCartney, 165 B.R. 18, 21 (Bankr. W. D. Pa. 1994).

We agree.  It is undisputed that, had Integra sought a deficiency judgment against Lamar's, it would have been required under the DJA to name McCartney as a respondent in its petition or risk discharging him as loan guarantor.  It is also undisputed that, had Integra named McCartney as a respondent in a deficiency action against Lamar's, it would have clearly violated the automatic stay in place in his bankruptcy.  Moreover, it is clear that following the sheriff's sale, Lamar's, as a corporate entity, no longer had any assets.  Consequently, McCartney, as guarantor, would have been liable for satisfying any deficiency judgment claim asserted by Integra.  Simply stated, there was no way for Integra to pursue a deficiency judgment action against Lamar's and to protect its right to satisfaction of Lamar's debt without involving McCartney in the process.

Given McCartney's necessary participation in any deficiency judgment action initiated by Integra against Lamar's in state court, we find that the bankruptcy court properly concluded that the automatic stay extended to enjoin Integra from complying with the requirements of the DJA.  This case falls squarely under the "unusual circumstances" exception as developed in A.H. Robins and its progeny: any deficiency judgment recovery from Lamar's would have necessarily impacted upon McCartney's estate.  Indeed, because McCartney, as guarantor, was secondarily liable for any deficiency entered against Lamar's, and Lamar's, following the foreclosure and sheriff's sale, had no assets, McCartney would have been the real party defendant in a deficiency judgment

10

action by Integra against Lamar's.  Any deficiency judgment entered against Lamar's would have operated as a judgment or finding against him; an outcome clearly in tension with the purposes of the automatic stay.  Accordingly, Integra was stayed from pursuing a deficiency judgment action against the nondebtor third party Lamar's because McCartney was, in essence, the real party in interest.

IV.

Assuming, *arguendo*, that the automatic stay precluded Integra from pursuing a deficiency judgment action in state court, McCartney asserts that Integra should have sought relief from the automatic stay to allow it to name both Lamar's and McCartney in a deficiency judgment petition.  This same argument was considered and rejected in In re Wilkins, 150 B.R. 127 (Bankr. M. D. Pa. 1992), an opinion we find instructive.

In Wilkins, the creditor sought relief from an automatic stay to commence a deficiency judgment action under the DJA against both the debtor and nondebtor obligors.  The court denied the creditor's motion for two primary reasons.  First, the court held that 11 U.S.C. § 108(c) specifically extends the six-month limitation period for deficiency judgment actions under 42 Pa.C.S.A. § 5522(b).[2]  Id. at 128.  Thus, contrary to the

_____

[2] Section 108(c) of the Bankruptcy Code reads, in pertinent part:

[I]f applicable nonbankruptcy law . . . fixes a period
for commencing or continuing a civil action in a court other than
a bankruptcy court on a claim against the debtor, . . . and such
period has not expired before the date of the filing of the
petition, then such period does not expire until the later of--

11

creditor's argument, the Wilkins court found no urgency that the debtor's obligation to the creditor would be discharged unless the creditor received relief from stay and filed a deficiency petition within the six month limitation period.  Second, the court noted that the deficiency issues were likely to be settled in the bankruptcy court and consequently, there was no reason for the debtor to defend litigation in state court that could be settled in the bankruptcy forum.  Id. at 128-29.  In this respect, the court expressed its concern that the debtor not be "burdened by litigation and resulting legal fees if unnecessary at this time."  Id. at 129.[3]

We agree with the Wilkins court that debtors should not be burdened by state court litigation when deficiency judgment actions impacting upon the debtor's estate can be settled in the bankruptcy forum.  Indeed, to permit state court deficiency judgment actions involving the debtor to proceed when they can be

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362 . . . with respect to such claim.

[3] The court also held that the creditor must commence a deficiency judgment action against the nondebtor obligors within the six-month limitation period permitted by state law.  Wilkins, 150 B.R. at 128.  Significantly, however, the court expressly noted that permitting the creditor to proceed against the nondebtor obligors would have no impact upon the debtor's deficiency liability, and that the assets of the nondebtors could be collected without risk of discharging the debtor pursuant to the DJA.  Id.  Thus, unlike the present case, the Wilkins court found no "unusual circumstances" that would warrant extending the automatic stay to the nondebtor obligors.

adjudicated in the bankruptcy court is to do violence to the purposes of the automatic stay. As discussed earlier, by centralizing all prebankruptcy civil claims against a debtor in the bankruptcy court, the debtor is granted a "breathing spell" during which he is relieved of the financial pressures that drove him to bankruptcy. Maritime, 959 F.2d at 1204. The centralization of all claims in the bankruptcy court also permits the assets of the debtor's estate to be marshaled for distribution to creditors in an orderly and equitable fashion. Id. (citation omitted). These benefits of the automatic stay could not be achieved if creditors are permitted relief from stay to pursue state court deficiency judgment actions impacting on the estate of the debtor. Debtors would be forced to expend valuable time, energy and resources defending against state court litigation that could be settled directly in the bankruptcy court.[4]

Moreover, we fail to see how McCartney was harmed by Integra's failure to seek relief from the automatic stay. As the record clearly demonstrates, the bankruptcy court held a valuation hearing and heard argument concerning the fair market value of Lamar's property sold at the sheriff's sale. The court subsequently entered an order finding the value of Lamar's

---

[4] We note also that considerations of judicial economy weigh against granting creditors relief from stay to pursue state court deficiency judgment actions that impact upon the estate of the debtor and could be settled in the bankruptcy court. Indeed, the time, energy and resources of the courts are no less valuable commodities to preserve when it is possible to litigate a claim in one forum instead of two.

13

property to be $20,000 and directing Integra to recalculate its deficiency claim based on that value. Thus, the bankruptcy court afforded McCartney an opportunity to present evidence and testimony at a hearing specifically convened to determine the fair market value of the property sold at the sheriff's sale. This is precisely the same opportunity to be heard that McCartney would have been granted in a state court deficiency judgment action commenced under the DJA. See 42 Pa.C.S.A. § 8103(c)(4). In addition, the bankruptcy court's determination of the fair market value of the Lamar's property resulted in a *decrease* in the deficiency claim owing to Integra, further demonstrating that McCartney was not harmed by Integra's failure to seek relief from the stay. Insofar as McCartney would have us find that he was prejudiced by his inability fully to escape liability for his guaranty, as may have been possible under the DJA, we decline to do so. We will not transmogrify the DJA into a means for guarantors to escape liability from their guaranties.[5]

_____

[5] See Fidelity Bank, N.A. v. Bourger, 663 A.2d 213, 214 (Pa. Super. Ct. 1995), alloc. denied, 670 A.2d 142 (Pa. 1996), holding that the purpose of the Deficiency Judgment Act is

> to relieve a debtor of further personal liability to the creditor, if the real property taken by the creditor on an execution has a "fair market value", [sic] as of the date of the execution sale, sufficient so that the creditor may dispose of the property to others (or even, sometimes, use it himself) *without a net loss to the creditor*[.]

(citations and internal quotations omitted) (emphasis added).

14

Accordingly, we conclude that none of McCartney's substantive rights were prejudiced by Integra's failure to seek relief from the automatic stay.

V.

In his final argument, McCartney asserts that the bankruptcy court erred by holding that 11 U.S.C. § 108(c) operated to suspend the limitations period for initiating a deficiency judgment action in state court pursuant to the DJA. Because we have already determined that Integra was stayed from pursuing a deficiency judgment action in state court against either Lamar's or McCartney, we need not decide this issue. Nonetheless, we note parenthetically that the Pennsylvania Superior Court has unequivocally held that, under 11 U.S.C. § 108(c)(2), the six month limitation period for the filing of a deficiency petition pursuant to the DJA does not expire until thirty days after notice of the termination of the automatic stay. Citizens National Bank of Evans City v. Gold, 653 A.2d 1245, 1247-48 (Pa. Super. Ct. 1995) (citing Wilkins); accord In re C.K. Smith, 192 B.R. 397, 399-400 (Bankr. W. D. Pa. 1996).

VI.

In summary, we are satisfied that Integra took all the steps legally possible to protect its rights to a deficiency claim against McCartney as guarantor of Lamar's debt. Integra filed a proof of claim in McCartney's bankruptcy proceeding and pursued Lamar's to foreclosure and sheriff's sale. Since any other action to collect on the deficiency would have necessarily involved McCartney, Integra could not proceed further without

15

either violating the automatic stay or sacrificing its deficiency claim against McCartney as guarantor of Lamar's debt. We conclude that Integra was stayed from initiating a deficiency judgment action against Lamar's and McCartney in state court. Accordingly, we will affirm the order of the district court.

MCCARTNEY V. INTEGRA NATIONAL BANK NORTH, ETC. – NO. 96-3023

STAPLETON, J., concurring.

McCartney argues that the DJA released his guaranty obligation to Integra when the bank failed to institute a deficiency proceeding naming him as a guarantor within six months of its purchase of the property at the execution sale. This is an untenable position. The automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, clearly would be undermined by the enforcement in this situation of that portion of the DJA releasing a guarantor who is not so named. 42 Pa. C.S.A. § 8103(b). If the court were willing to rest its decision on this ground, I would join without comment. The court says a great deal more, however, and I am, accordingly, unable to join in its opinion.

It is unnecessary for the court to address the issue of whether the DJA in this situation has the effect of releasing Lamar's Restaurant & Lounge's obligation to Integra. Accordingly, I would not address that issue. Were it necessary

16

for the court to address it, however, I would find no justification for concluding, as does the court, that the automatic stay provision deprives a primary obligor not in bankruptcy of the benefit that the DJA intended it to have. There are simply no "unusual circumstances" warranting an exception from the general rule that § 362 applies only to a debtor in bankruptcy. The court's conclusion to the contrary, while it makes no difference here, is likely to lead to mischief in the context of other cases.

As the court persuasively demonstrates, there can be no question that giving full effect to the DJA would undercut the objective of the automatic stay of § 362. There is thus a conflict here between state law and bankruptcy law that must be resolved. Under the Supremacy Clause, in cases of irreconcilable conflict, state law must give way. This does not, however, give a court an unlimited license to decline enforcement of state rules of decision. The court must look for the accommodation which will secure the objective of the bankruptcy law and, at the same time, intrude least on the objective or objectives underlying the state law rule.

The accommodation that this approach counsels here requires the following conclusions:

> (a) The objective of § 362 can be secured by holding unenforceable that portion of the DJA which requires the creditor to join the bankrupt guarantor in the DJA proceeding upon pain of losing his claim against the bankrupt guarantor. It would necessarily follow that the bankrupt guarantor would not be bound by the deficiency determination unless he chose, with court approval, to participate. It also follows that the bankrupt guarantor can be pursued in bankruptcy court during the period specified in § 108(c) of the

17

Bankruptcy Code, even though the creditor may not be successful if the claim has been discharged for some reason other than this portion of the DJA.

(b) There is nothing inconsistent between § 362 and that portion of the DJA that requires an executing creditor to file a deficiency proceeding against the primary debtor in order to preserve his claim against the primary debtor. Giving effect to this portion of the DJA would be consistent with the rationale of Maritime Electric Co. v. U.S. Jersey Bank, 959 F.2d 1194 (3d Cir. 1991). Moreover, as I have noted, I find nothing in the Code that would justify depriving the primary debtor of the protection of the DJA.

The difference between these conclusions and those reached by the court is not material here because McCartney argues only that he was released under the terms of the DJA. He does not argue that he was released by the effect which Pennsylvania law accords an instrument having the terms of his note.[6] The difference between my conclusions and those of the court would be important, however, if it appeared that Pennsylvania follows the generally accepted rules regarding the effect on a guarantor of releasing the primary debtor and if the plaintiff were relying on that law.

We have no occasion here to comment on Pennsylvania's rule, but the generally accepted rule is that a "party who holds a contract of guaranty may by his act release the guarantor, even though he may not intend to do so. A guarantor [, for example,] is discharged by operation of law from further liability by any act which extinguishes the principal obligation . . . ." 38A

---

6 The appendix does not contain what McCartney refers to as his note of guaranty, and he cites no Pennsylvania case law on whether and under what circumstances release of the primary obligor releases a guarantor or surety, etc.

18

C.J.S. Guaranty § 83 at 642 (1996). I perceive no inconsistency between the Bankruptcy Code and a state law rule which permits parties to bargain for an arrangement such that the guarantor will be liable only if the primary debtor is not released by the creditor. It necessarily follows that there is nothing inconsistent between the bankruptcy law and enforcement of this generally accepted state law rule. It would thus be permissible to hold in an appropriate case that a creditor in a state with such a rule releases his claim against a guarantor in bankruptcy if it allows its rights against the primary debtor to lapse by failing to pursue a DJA type proceeding within six months.

I realize that such a holding would mean that a creditor in such a state would have to pursue the primary debtor in a deficiency proceeding even where it has little or no hope of being able to collect from the primary debtor. But that is a policy choice made in statutes like the DJA, and we have no justification for rejecting that policy choice and no basis for drawing a line between cases where the primary debtor has no assets, a few assets, or many assets but perhaps not enough to cover the judgment.

The statutory provisions relied on by McCartney are preempted by federal bankruptcy law. I would affirm the judgment of the district court for that reason.

19