**In re MID–ATLANTIC HANDLING SYSTEMS, LLC, et al., Debtors.**

**Maintainco, Inc., Plaintiff,**

**v.**

**Mitsubishi Caterpillar Forklift America, Inc., Mid–Atlantic Handling Systems, LLC, and John Does 1–10 (Business Entities and Persons Related to Mid–Atlantic Handling Systems, LLC), Defendants.**

Bankruptcy Nos. 03–27997 to 03–28001. Adversary No. 03–2469(DHS).

United States Bankruptcy Court, D. New Jersey.

Nov. 21, 2003.

Gary N. Marks, Esq., Norris, McLaughlin & Marcus, P.C., Somerville, NJ, for Plaintiff Maintainco, Inc.

H. Curtis Meanor, Esq., Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, P.C., Newark, NJ, for Defendant Mitsubishi Caterpillar Forklift America, Inc.

Sharon L. Levine, Esq., Lowenstein Sandler, P.C., Roseland, NJ, for Defendant Mitsubishi Caterpillar Forklift America, Inc.

Paul H. Aloe, Esq., Kudman Trachten LLP, Hackensack, NJ, for Defendant Mid–Atlantic Handling Systems, LLC.

Chad B. Friedman, Esq., Ravin Greenberg, P.C., Roseland, NJ, for the Official Committee of Unsecured Creditors.

## *OPINION*

DONALD H. STECKROTH,
Bankruptcy Judge.

Before the Court is the motion filed by Maintainco, Inc. ("Maintainco"), the Plaintiff in an action captioned, *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift America, Inc. and Mid–Atlantic Handling Systems, LLC,* seeking an order remanding the matter to the New Jersey Superior Court–Chancery Division, pursuant to 28 U.S.C. § 1452(b). In addition, Maintainco requests that this Court enter an order: 1) declaring that the automatic stay does not apply to Mitsubishi Caterpillar Forklift America, Inc. ("MCFA"); and 2) vacating the automatic stay with respect to Mid–Atlantic Handling Systems, LLC ("Mid–Atlantic").

**1.** In 1985, MDI was a subsidiary of MCFA.

The Court has jurisdiction under 28 U.S.C. §§ 1334(b), 151, and 157(a). Venue is proper under 28 U.S.C. § 1409(a). The following shall constitute the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## I. Procedural History and Factual Background

MCFA manufactures Mitsubishi brand forklift trucks and sells the trucks to consumers through authorized dealers. In 1985, Maintainco and Machinery Distribution, Inc. ("MDI") [1] entered into a "Mitsubishi Forklift Trucks Standard Distributor Sales and Service Agreement," making Maintainco an authorized distributor of Mitsubishi forklift trucks and products in the designated area of the twelve northern counties in the State of New Jersey. (*See* Certification of Theodore Margolis, Esq., Exhibit "4," ¶ 4)(hereinafter "Margolis Cert.").

Despite a fifteen-year business relationship, Maintainco filed a civil lawsuit in the Superior Court of New Jersey–Chancery Division against MCFA on September 12, 2000. (Margolis Cert., Exhibit "4"). In this complaint, Maintainco alleges that MCFA, *inter alia,* failed to provide Maintainco with the necessary business support to successfully market Mitsubishi forklift products in the northern New Jersey region. (Margolis Cert., Exhibit "4," ¶ 13). Further, Maintainco alleges that MCFA "wrongfully undercut [its] efforts to improve its market share and obtain the profits it deserves." (Margolis Cert., Exhibit "4," ¶ 14). Maintainco asserted several causes of action against MCFA, including wrongful termination under the

New Jersey Franchise Practices Act[2], breach of contract, and breach of the covenant of good faith and fair dealing. (Margolis Cert., Exhibit "4"). Most importantly for this Court's considerations, Maintainco asserted a cause of action against MCFA for tortious interference, premised upon MCFA's alleged improper appointment of a dual dealer marketing Mitsubishi brand forklift trucks in northern New Jersey. (Margolis Cert., Exhibit "4," ¶ 17). According to Maintainco, the 1985 "Mitsubishi Forklift Trucks Standard Distributor Sales and Service Agreement" entered into between it and MCFA "specifically made Maintainco not only the sole, but also the exclusive" distributor of Mitsubishi forklift products in the northern New Jersey region. (Margolis Cert., Exhibit "2," ¶ 14). Consequently, according to Maintainco, MCFA's appointment of a second, dual dealer of Mitsubishi forklift trucks in the designated region constituted a breach of contract and a specific act by MCFA to destroy Maintainco's business.

After Maintainco filed suit in New Jersey State Court, MCFA removed the action to the New Jersey District Court on September 19, 2000 based on diversity of citizenship jurisdiction. (Margolis Cert., Exhibit "6"). While the matter was pending in federal district court, Maintainco moved to amend its complaint to add Mid–Atlantic as an additional defendant and to remand the matter to state court. (Margolis Cert., Exhibit "6").

On June 13, 2001, The Honorable Stanley R. Chesler, U.S.M.J., entered an order granting Maintainco's motion for leave to amend its complaint to add Mid–Atlantic as a defendant. (Margolis Cert., Exhibit "6").[3] Because the addition of Mid–Atlantic as a defendant destroyed diversity of citizenship between the parties[4], Judge Chesler recommended that the matter be remanded to state court. (Margolis Cert., Exhibit "6"). On June 26, 2001, MCFA appealed Judge Chesler's decision recommending that the case be remanded to state court. (Margolis Cert., Exhibit "6"). On August 21, 2001, The Honorable John C. Lifland, U.S.D.J., adopted the Report and Recommendation issued by Judge Chesler and remanded the litigation to the Superior Court of New Jersey–Chancery Division. (Margolis Cert., Exhibit "6").

In his decision to remand, Judge Lifland particularly relied on the following analysis set forth by Judge Chesler:

> [T]he Court notes that the claims involved in this case are state law claims; there is no particular federal interest in litigating the state court issues involved in either plaintiff's original claim against Mitsubishi or in litigating the claims to be brought against [Mid–Atlantic] and, indeed, there's a good argument to be made that given the nature of these claims which have a tendency to be on what might be called the cutting edge of the area of franchise litigation and franchise practices litigation that's more appropriate for the state courts in fact to decide such cutting edge issues.
>
> [ (Margolis Cert., Exhibit "6").]

The First Amended Complaint filed by Maintainco asserted the following causes of action against Mid–Atlantic: 1) tortious

---

2. N.J.S.A. 56:10–1 to –29.

3. In response to the First Amended Complaint, MCFA filed a counterclaim alleging that Maintainco disparaged MCFA and Mitsubishi products, impermissibly convinced customers to purchase Toyota brand products instead of Mitsubishi products, and failed to achieve adequate market penetration for MCFA. (Margolis Cert., ¶ 11).

4. Mid–Atlantic and Maintainco are both New Jersey corporations.

interference by Mid–Atlantic (and MCFA) with Maintainco's customers in the northern New Jersey region; 2) tortious interference by Mid–Atlantic with respect to Maintainco's business relationship with MCFA; and 3) breach of contract by Mid–Atlantic "to Maintainco as a third-party beneficiary" of a letter agreement executed between Mid–Atlantic and MCFA on July 13, 2000. (Margolis Cert., Exhibit "2").

Since the remand to New Jersey State Court, the matter has been plagued by discovery disputes and procedural "jockeying" between the parties. As a result, The Honorable Gerald C. Escala, J.S.C., the state court judge presiding over the case, appointed Thomas J. Giblin, Esq. as a special Discovery Master on February 28, 2002. (Margolis Cert., Exhibit "7"). The Discovery Master was appointed to decide any contested issues arising during the discovery process, and any discovery rulings issued by the Discovery Master can be appealed by the parties to Judge Escala. (Margolis Cert., Exhibit "7"). Since his appointment approximately eighteen months ago, the Discovery Master has had extensive involvement in the underlying lawsuit. The Discovery Master has reviewed hundreds of pages of briefs, affidavits, and business records. (Margolis Cert., ¶ 21). Formal hearings have been held before the Discovery Master on at least four separate occasions, and the Discovery Master has already issued seven different rulings concerning specific discovery disputes between Maintainco and MCFA.[5] (Margolis Cert., ¶ 21).

To date, the paper discovery exchanged between the parties is voluminous. Maintainco has produced over one million pages of documents, while MCFA has produced approximately twenty-seven thousand documents. (Margolis Cert., ¶ 23). Although the parties have not yet taken most of the fact or expert depositions, counsel for MCFA and Maintainco have proposed draft schedules for depositions and for the exchange of expert reports. (Certification of Thomas J. Collin, Esq., ¶ 12)(hereinafter "Collin Cert."). The parties are awaiting approval of the proposed schedules by either the Discovery Master or the state court. (Collin Cert., ¶ 12).

In addition, there are four motions currently pending before Judge Escala in the New Jersey Superior Court. On November 5, 2002, MCFA appealed Ruling No.2 of the Discovery Master. (Margolis Cert., ¶ 24(a)). The issues have been fully briefed by both MCFA and Maintainco, and the parties are awaiting a decision from Judge Escala. On March 25, 2003, Maintainco filed an appeal of Ruling No.6 of the Discovery Master. (Margolis Cert., ¶ 24(b)). Similarly, the issues have been fully briefed by MCFA and Maintainco, and the parties are awaiting a decision from Judge Escala. (Margolis Cert., ¶ 24(b)). On April 2, 2003, Maintainco filed a motion for sanctions against MCFA and Mid–Atlantic stemming from Mid–Atlantic's alleged refusal to comply with its discovery obligations. (Margolis Cert., ¶ 24(c)). Finally, on May 9, 2003, Maintainco filed a motion seeking leave to file a Second Amended Complaint in order to add three additional counts against MCFA for alleged violations of the New Jersey Consumer Fraud Act and for common law fraud. (Margolis Cert., ¶ 24(d)). MCFA and Maintainco have fully briefed these issues and the parties are awaiting a decision from Judge Escala. (Margolis Cert., ¶ 24(d)).

5. Hearings were held on the following dates: April 4, 2002, April 24, 2002, November 25, 2002 and April 25, 2003.

On May 29, 2003, Mid–Atlantic filed a Chapter 11 bankruptcy petition with the United States Bankruptcy Court for the District of New Jersey. On June 5, 2003, MCFA requested that Judge Escala stay all proceedings in the underlying lawsuit, including the claims filed by Maintainco against MCFA. (Maint.Br., pg.3).[6] On June 6, 2003, Judge Escala issued an order staying the proceedings only as to the debtor, Mid–Atlantic. (Maint.Br., pg.3). In addition, Judge Escala ordered that the parties must seek relief from the automatic stay as against Mid–Atlantic within thirty days, or else waive their claims against Mid–Atlantic in the pending state court action. (Margolis Cert., Exhibit "15"). Thereafter, on June 17, 2003, MCFA filed a notice of removal of the entire state court action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1452 and Federal Rule of Bankruptcy Procedure 9027.[7] This is the second time MCFA has removed the state court action to federal court.

It is contended by MCFA that it "removed the action because the relief sought by Maintainco would, if granted, destroy a major asset of Mid–Atlantic, its dealer agreement with MCFA for the sale and service of Mitsubishi forklift trucks in northern New Jersey." (MCFA Br., pg. 1).[8] In response to MCFA's removal, Maintainco filed the present motion seeking to once again remand the underlying action to the Superior Court of New Jersey. Maintainco also moves for an order declaring that the automatic stay does not apply to MCFA and vacating the automatic stay with respect to Mid–Atlantic so that Maintainco can continue to prosecute its state law claims against Mid–Atlantic.

On October 6, 2003, after argument on the motion and one day before the bar date for filing proofs of claims, Maintainco filed a proof of claim with addendum stating it was neither consenting to bankruptcy court jurisdiction to adjudicate the pending litigation nor waiving its right to have the action tried in the state court.

## II. Discussion

■ The first level of inquiry in evaluating a request for remand is to examine whether the action was properly removed. *In re Montague Pipeline Technologies Corp.*, 209 B.R. 295, 298 (Bankr.E.D.N.Y. 1997). Removal of claims related to bankruptcy cases is governed by 28 U.S.C. § 1452. Section 1452(a) provides in pertinent part that "[a] party may remove any claim or cause of action in a civil proceeding ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452 (1994).

28 U.S.C. § 1334(a) provides federal district courts with "original and exclusive jurisdiction of all cases under title 11." *See* 28 U.S.C. § 1334(a) (1993). In turn, § 1334(b) grants federal district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *See* 28 U.S.C. § 1334(b) (1993).[9]

---

6. The designation "Maint. Br." refers to the moving brief filed by Maintainco, at page 3.

7. By operation of 28 U.S.C. § 157 and the 1984 District Court of New Jersey "Standing Order of Referral of Cases to the Bankruptcy Court," the matter was referred to the Bankruptcy Court from the District Court of New Jersey.

8. The designation "MCFA Br." refers to the opposition brief filed by MCFA, at page 1.

9. The jurisdictional grant in § 1334 is applicable to the bankruptcy court through 28 U.S.C. § 157(a), which allows the district court to refer cases under title 11 and proceedings arising under title 11 or arising in or

■ A proceeding is one "arising under title 11" if the claims asserted in the matter are predicated on a right created or determined by title 11. *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 267 (3d Cir.1991); *Montague Pipeline Technologies*, 209 B.R. at 299 (citation omitted). A proceeding "arising in" a case under title 11 includes various administrative matters "that are found only in bankruptcy and which do not exist outside of a bankruptcy case." *Id.* (citation omitted). *See* 28 U.S.C. § 157(b)(2). Proceedings "related to" a case under title 11 are generally described as those "non-core" proceedings otherwise related to a case under title 11 and whose outcome could conceivably have an effect on the administration of the bankruptcy estate. *In re The Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1181 (3d Cir.1996)(stating that an action is related to a bankruptcy case "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate"). *See* 28 U.S.C. § 157(c)(1).

■ While the pre-petition state law tortious interference and breach of contract claims asserted by Maintainco against Mid–Atlantic clearly do not "arise under" or "arise in" a case under title 11, these claims are, at the least, "related to" Mid–Atlantic's Chapter 11 case since the outcome of the underlying lawsuit could alter the Debtor's rights concerning a significant asset of the estate, namely, the distribution agreement between Mid–Atlantic and MCFA. Thus, the state court action is a proceeding "related to" the Debtor's bankruptcy case and bankruptcy court jurisdiction exists pursuant to

§ 1334(b). Therefore, the state court action was properly removed by MCFA under § 1452(a) and this Court may consider the remand motion filed by Maintainco.

### A. Maintainco's Request For The Bankruptcy Court To Abstain From Adjudicating The Underlying Litigation

The gravamen of Maintainco's motion requests that the Court abstain from adjudicating the removed state court action filed by Maintainco against MCFA and Mid–Atlantic. Three methods exist through which a federal court may decline to exercise its jurisdiction over actions properly removed pursuant to the jurisdictional grant contained in 28 U.S.C. § 1334(b). *In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 756 (D.N.J.1996).

■ First, 28 U.S.C. § 1334(c)(2) contains a provision for mandatory abstention, whereby the court determines "that the action is 'outside the removal jurisdiction granted to the federal courts by Congress' ... and remands the suit back to state court." *Id.* (quoting *Balcor/Morristown Ltd. P'ship v. Vector Whippany Assocs.*, 181 B.R. 781, 788 (D.N.J.1995)); *see also* 28 U.S.C. § 1334(c)(2) (1993). Second, 28 U.S.C. § 1334(c)(1) provides for permissive or discretionary abstention, permitting a district court to abstain from adjudicating a matter in the interests of justice and comity or out of respect for state law. *In re Donington*, 194 B.R. at 756; *see also* 28 U.S.C. § 1334(c)(1) (1993). Finally, 28 U.S.C. § 1452(b) not only provides for the removal of state court actions to federal court, but the statutory provision also grants the district court with the authority

---

related to a case under title 11 to the bankruptcy judges for the district. Further, there is a 1984 "Standing Order of Referral of Cases to the Bankruptcy Court" in the New

Jersey District Court that refers all such matters to the bankruptcy judges within New Jersey.

to "remand such claim or cause of action on any equitable ground." *Id.; see also* 28 U.S.C. § 1452(b) (1994). Where grounds for mandatory or discretionary abstention are present, remand is proper. *In re Micro Design, Inc.*, 120 B.R. 363, 366 (E.D.Pa.1990). The Court will address each abstention principle in turn.

### 1. Mandatory Abstention

Mandatory abstention derives from 28 U.S.C. § 1334(c)(2), which provides as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.
>
> [28 U.S.C. § 1334(c)(2) (1993).]

■ Mandatory abstention by a district court is appropriate only when each of the following six prerequisites are satisfied: 1) a timely motion for abstention is made by a party in the proceeding; 2) the proceeding is based upon a state law claim or state law cause of action; 3) the proceeding is related to a case under title 11; 4) the proceeding does not arise under title 11; 5) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and 6) an

action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction. *In re Donington*, 194 B.R. at 757. *See also In re Kamine/Besicorp Allegany, L.P.*, 214 B.R. 953, 974–75 (Bankr.D.N.J.1997); *In re Warren*, 125 B.R. 128, 131 (E.D.Pa.1991).

It is undisputed that this case satisfies the first, second, and fifth factors of the mandatory abstention analysis, and MCFA does not challenge these factors. Maintainco filed a timely abstention motion seeking remand to state court, and all of the claims present in this litigation stem from either state statutory or common law. With respect to the fifth factor, the dynamic of the underlying lawsuit in its present posture could not have been commenced in federal district court because no federal question exists, and complete diversity of citizenship no longer exists after Maintainco added Mid–Atlantic as an additional defendant.[10] However, MCFA and Mid–Atlantic argue that mandatory abstention is not appropriate since, they contend, the underlying lawsuit is a core proceeding under title 11 and Maintainco has failed to demonstrate that the action can be timely adjudicated in state court.

MCFA contends that the removed lawsuit is a "core" proceeding based upon 28 U.S.C. §§ 157(b)(2)(A), (B), and (O). These statutory provisions provide in relevant part:

> Core proceedings include, but are not limited to–
>
> (A) matters concerning the administration of the estate;

---

10. Mid–Atlantic argues that independent federal jurisdiction exists so long as the Court "strips" the claims against Mid–Atlantic from the underlying lawsuit. That is, counsel for Mid–Atlantic submits that "[s]ince the action has now been stayed against Mid–Atlantic, there is once again diversity." Not only does counsel for Mid–Atlantic fail to provide any legal support for this theory, but the argument begs the Court to ignore the procedural history of this case. Whether or not the action against Mid–Atlantic is stayed is of no moment since the question of whether federal jurisdiction exists is a separate inquiry and it surely does not exist in the absence of Mid–Atlantic being dismissed from the litigation.

(B) [the] allowance or disallowance of claims against the estate . . . ; and

(O) other proceedings affecting the liquidation of the assets of the estate . . . . [*See* 28 U.S.C. §§ 157(b)(2)(A), (B) and (O) (1994).]

With respect to § 157(b)(2)(A), MCFA maintains that since the underlying action concerns the validity of a major asset of the estate, namely, the dealer agreement between Mid–Atlantic and MCFA, "the legal status of [this] major asset of the estate will greatly affect the administration of the Debtor's estate as any removal of the asset from the estate will hinder the Debtor's attempts to reorganize." (MCFA Br., pgs. 11–12). MCFA claims that § 157(b)(2)(B) is satisfied because Maintainco is effectively "attempting to seek allowance of a claim against the Debtor's estate. If Maintainco were successful in the [underlying action], it would have a claim against the Debtor's estate for damages, fees, costs, and interest." (MCFA Br., pg. 12). Finally, under § 157(b)(2)(O), MCFA submits that Maintainco "is attempting to liquidate an asset of the estate," and as such, the underlying action is a core proceeding forestalling the exercise of mandatory abstention.

 As previously noted, it can hardly be disputed that the underlying lawsuit relates to Mid–Atlantic's Chapter 11 case so as to confer "related to" jurisdiction upon this Court. However, whether the underlying proceeding "arises under" either title 11 or is a case under title 11 "depends on whether the nature of the action falls within the core jurisdiction of the bankruptcy court and is therefore found to be a 'core proceeding.' " *In re Donington*, 194 B.R. at 757. Simply put, a core proceeding " 'invokes a substantive right provided by title 11 or by its nature, could arise *only* in the context of a bankruptcy case.' " *Copelin v. Spirco, Inc.*, 182 F.3d 174, 180 (3d Cir.1999) (citation omitted)(emphasis added). In contrast, "a 'non-core' proceeding belongs to 'the broader universe of all proceedings that are not core proceedings but are nevertheless related to a bankruptcy case.' " *Id.* (citation omitted). For mandatory abstention to apply, the proceeding in question must be a non-core, related to proceeding. *In re Becker*, 136 B.R. 113, 116 (Bankr. D.N.J.1992). For the reasons that follow, this Court disagrees that the underlying action constitutes a core proceeding under §§ 157(b)(2)(A), (B) or (O).

First, with respect to § 157(b)(2)(B), although it may be true that if successful in the underlying lawsuit Maintainco may have a claim against Mid–Atlantic, it cannot be said that by prosecuting its prepetition, state law claims against Mid–Atlantic Maintainco is attempting to seek allowance of a claim against the *Debtor's estate* in the traditional sense. (MCFA Br., pg. 12)(emphasis added). Maintainco's potential damages claim against Mid–Atlantic may quantify damages for Mid–Atlantic's alleged tortious interference with Maintainco's business relations, but the damages claim "does not involve the 'allowance or disallowance of claims against the estate' in the traditional sense that it will determine whether [Maintainco] has a claim against [Mid–Atlantic's bankruptcy] estate." *Bevilacqua v. Bevilacqua*, 208 B.R. 11, 16 (E.D.N.Y.1997).

However, subsequent to oral argument and on the eve before the Court was prepared to issue this decision, Maintainco filed an "unliquidated" proof of claim in the Chapter 11 proceeding. An addendum to the proof of claim contains the following provision: "[b]y the filing of this proof of claim, Maintainco is neither consenting to the jurisdiction of the Bankruptcy Court to adjudicate the pending litigation nor waiving any of its rights to have the action

tried in the State Court, all such rights being expressly reserved."

██ Following the filing of this proof of claim, MCFA immediately filed a supplemental letter brief with the Court, arguing that the filed proof of claim eviscerated Maintainco's attempt to have this Court mandatorily abstain from adjudicating the underlying litigation. MCFA argues the underlying litigation was transformed into a core proceeding upon the filing of the proof of claim. Ordinarily, this assertion is correct. "When a creditor files a proof of claim it submits itself to the Bankruptcy Court's equitable power, and the claims, even though arising under state law, become core proceedings within the jurisdiction of the bankruptcy court." *Pan Am. World Airways, Inc. v. Evergreen Int'l Airlines, Inc.*, 132 B.R. 4, 7 (S.D.N.Y.1991)(citing *Gulf States Exploration Co. v. Manville Forest Prods. Corp.*, 896 F.2d 1384, 1389–90 (2d Cir.1990)). *See also In re Best Reception Sys., Inc.*, 220 B.R. 932, 944 (Bankr.E.D.Tenn. 1998)("[W]here a party has filed a proof of claim in a debtor's case, any action asserted by that party against the debtor that raises the same issues as those encompassed by the proof of claim is a core proceeding under ... § 157(b)(2)(B)"); *In re Argus Group 1700, Inc.*, 206 B.R. 737, 747–48 (Bankr.E.D.Pa.1996)(adopting the rationale that the filing of a proof of claim in a bankruptcy proceeding transforms a pre-petition state law claim which was filed in state court before the bankruptcy filing into a core proceeding), *aff'd*, 206 B.R. 757 (E.D.Pa.1997). Because the proof of claim filed by Maintainco encompasses the same issues as those raised by the removed state law proceeding (in fact, the state court complaint was attached to the proof of claim), the filing, without more, converted the underlying action into a core proceeding under § 157(b)(2)(B).

██ In reply, Maintainco filed its own responsive letter brief. Maintainco advances several arguments that the proof of claim does not convert the matter into a core proceeding and also submits it should be permitted to withdraw the proof of claim without prejudice. The Court will accept this statement as a formal request by Maintainco to withdraw the proof of claim it filed against Mid–Atlantic. *See, e.g., In re Overly–Hautz Co.*, 57 B.R. 932, 935 (Bankr.N.D.Ohio 1986)(holding that a letter to the court was sufficient for the withdrawal of a proof of claim), *aff'd*, 81 B.R. 434 (N.D.Ohio 1987).

The withdrawal of a proof of claim is guided by Federal Rule of Bankruptcy Procedure 3006, which provides in relevant part:

> A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule. If after a creditor has filed a proof of claim an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding, or the creditor has accepted or rejected the plan or otherwise has participated significantly in the case, the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee or debtor in possession ....

[Fed. R. Bankr. P. 3006].

██ The plain language of Bankruptcy Rule 3006 establishes bright-line tests marking the termination of a creditor's "otherwise unfettered right voluntarily and unilaterally to withdraw a proof of claim." *In re Cruisephone, Inc.*, 278 B.R. 325, 330 (Bankr.E.D.N.Y.2002). A creditor must obtain a court order to withdraw a proof of claim if: 1) an objection to the claim has been filed; 2) a complaint has been filed against the creditor in an adversary proceeding; 3) the creditor has ac-

cepted or rejected the debtor's plan; or 4) the creditor has otherwise participated significantly in the case. *Id.* Further, upon the successful withdrawal of a proof of claim pursuant to Bankruptcy Rule 3006, the withdrawn proof of claim is a legal nullity and the parties are left as if the claim has never been filed. *Id.* at 333; *In re 20/20 Sport, Inc.,* 200 B.R. 972, 976 (Bankr.S.D.N.Y.1996); *Smith v. Dowden,* 47 F.3d 940, 943 (8th Cir.1995).

The four circumstances requiring an order from the Court in order for Maintainco to withdraw its proof of claim are not present. In order to trigger the requirement of judicial approval, an objection to a proof of claim must precede proof of claim withdrawal. *Id.* Because MCFA and Mid–Atlantic did not object to the proof of claim filed by Maintainco prior to the request to withdraw on October 14, 2003, the first circumstance necessitating Court approval is not met. The second situation is also not met because an adversary proceeding against Maintainco has not been filed by either Mid–Atlantic or MCFA after Maintainco filed its proof of claim on October 6, 2003. Finally, the third and fourth instances requiring Court approval are not satisfied since Maintainco has not accepted or rejected any plan of reorganization proposed by Mid–Atlantic nor participated significantly in the bankruptcy case. The filing of a motion in this Court by Maintainco seeking to remand an involuntarily removed case does not constitute "significant participation" for purposes of Bankruptcy Rule 3006. Therefore, this Court will permit Maintainco to withdraw its proof of claim and the parties are left as if the claim had never been filed. *In re Cruisephone, Inc.,* 278 B.R. at 333. The consequence of the withdrawn proof of claim is that the underlying action does not constitute a core proceeding pursuant to § 157(b)(2)(B).

In addition, even if the proof of claim were not allowed to be withdrawn, in view of the fact that the proof of claim was filed: (i) on the eve of the bar date for filing claims; (ii) after the Court had reserved decision on the motion for abstention and remand; and (iii) with a specific reservation of rights stating that under the circumstances, Maintainco was not consenting to the jurisdiction of the bankruptcy court, this Court finds such reservation to be effective under the particular circumstances of this case. As a result, the filing of the proof of claim with its reservation of rights does not transform Maintainco's pre-petition state law claims into a core proceeding nor constitute an acceptance of this Court's equitable jurisdiction.

Finally, MCFA's attempt to categorize the underlying lawsuit as a core proceeding under the general, catch-all provisions of §§ 157(b)(2)(A) and (O) must also fail. In *In re Meyertech,* the Third Circuit Court of Appeals aptly recognized the difficulty "to perceive of a proceeding which would not fall under the all-encompassing language of" either § 157(b)(2)(A) or § 157(b)(2)(O). 831 F.2d 410, 416 (3d Cir. 1987). As a result, the Circuit Court of Appeals cautioned against an expansive interpretation of these statutory provisions. *Id.* To that extent, the majority of bankruptcy courts have reasoned that state law, contract-type actions, such as the lawsuit removed by MCFA in this instance, which may literally fall within the broad catch-all language of §§ 157(b)(2)(A) and (O) are non-core, related proceedings. *See In re United Sec. & Communications, Inc.,* 93 B.R. 945, 957 (Bankr.S.D.Ohio 1988)(citing numerous cases).

Contrary to MCFA's argument, courts still hold such adversary proceedings to be non-core, related proceedings even if any eventual recovery may drastically effect the debtor's estate. *See, e.g., In re Don-*

*ington,* 194 B.R. at 759 (noting that § 157(b)(2)(O) " 'does not render a proceeding core merely because the resolution of the action results in more, or less, assets in the estate' ")(quoting *In re Baranello & Sons, Inc.,* 149 B.R. 19, 25 (Bankr. E.D.N.Y.1992)); *Acolyte Elec. Corp. v. City of N.Y.,* 69 B.R. 155, 175 (Bankr.E.D.N.Y.1986)(recognizing that traditional contract-type actions have a relation to and an impact upon the administration of the estate); *In re United Sec. & Communications, Inc.,* 93 B.R. at 957–58 (same).

No matter how critical it is for MCFA to treat the underlying litigation as a core proceeding, the nexus between the litigation and the Bankruptcy Code is insufficient to warrant classifying the matter as a core proceeding for purposes of mandatory abstention. Simply put, no substantive right under the Bankruptcy Code is at issue in the litigation. *In re Donington,* 194 B.R. at 759. Further, the facts giving rise to Maintainco's claims against Mid–Atlantic involve pre-petition events, and the alleged improper conduct occurred prior to the time Mid–Atlantic filed its Chapter 11 bankruptcy petition. *Id.* The underlying lawsuit is peripherally related to the bankruptcy proceeding and but for the intervention of Mid–Atlantic's Chapter 11 filing it could only have been brought in state court. For these reasons, this Court concludes that the underlying lawsuit is not a core proceeding under § 157(b)(2). Consequently, the third and fourth factors of the mandatory abstention test are satisfied.

The sixth and final factor in the mandatory abstention analysis requires this Court to determine whether the underlying lawsuit can be timely adjudicated in state court. *In re Donington,* 194 B.R. at 757. MCFA argues that this factor is not satisfied, claiming "the history of the ac-

tion makes it clear that timely adjudication will not occur in [the state court] forum." (MCFA Br., pg. 12). MCFA relies on the fact that the Superior Court of New Jersey has not yet set a discovery termination date or trial date. (MCFA Br., pg. 13).

While MCFA implicitly blames the Superior Court of New Jersey for the delay in moving the underlying action to trial, the procedural history of this case strongly suggests otherwise. The record before the Court demonstrates that the parties themselves are responsible for the prolonged and protracted pre-trial litigation. Simply put, MCFA and Maintainco have been embroiled in a contentious discovery dispute for well over two years. Even as far back as August of 2001, Judge Lifland surmised that "a significant amount of 'discovery jockeying' " was occurring between the parties. This finding is amplified by Judge Escala's need to appoint a Discovery Master in the state court proceeding to help facilitate the discovery process, foster cooperation between the parties, and resolve the countless discovery disputes in a timely fashion. Absent the parties' discovery disagreements, there is no reason to believe that this matter could not be timely adjudicated in the Superior Court of New Jersey.

Importantly, notions of comity and judicial economy warrant a conclusion that the state court is the proper forum for adjudicating this dispute. There is no legitimate reason to believe that the necessary time frame will be short-circuited by having the federal court adjudicate this matter. To the contrary, logic dictates that it may take more time to bring this case to trial in federal court because the Court would need time to familiarize itself with the voluminous record and pending motions presently before the state court.

It is simply more economical and efficient at this point in the proceedings for

the state court to adjudicate this matter. Judge Escala and the Discovery Master are already intimately familiar with the complexities of the case, the Discovery Master has issued seven written discovery rulings and has reviewed numerous documents exchanged between the parties. Further, four motions are fully briefed and awaiting resolution by Judge Escala, including one by Maintainco to file a Second Amended Complaint asserting additional state law causes of action against MCFA. Despite MCFA's contention, the underlying lawsuit has progressed in the state court to a point that to now make the parties retrace their efforts in this Court would cause needless delay and a waste of judicial resources. Therefore, this Court concludes that the final factor in the mandatory abstention analysis is satisfied. Accordingly, the Court concludes that mandatory abstention is required pursuant to § 1334(c)(2) and the Court hereby remands the litigation to the Superior Court of New Jersey.

### 2. Discretionary Abstention

Although the Court finds that mandatory abstention is warranted in this instance, it will nonetheless address the doctrines of discretionary abstention and equitable remand, which require a similar conclusion. "The equitable considerations relevant to the appropriateness of equitable remand and discretionary abstention under sections 1452(b) and 1334(c)(1), respectively, are essentially identical, and, therefore, a court's analysis is substantially the same for both types of relief." *In re Donington,* 194 B.R. at 759–60 (citing *Bal-*

*cor/Morristown Ltd. P'ship,* 181 B.R. at 788). The determination by a court of whether to exercise discretionary abstention and remand a matter is "necessarily fact driven." *Balcor/Morristown Ltd. P'ship,* 181 B.R. at 793. The basis for discretionary abstention, § 1334(c)(1), provides as follows:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
> [28 U.S.C. § 1334(c)(1) (1993).]

When deciding to exercise discretion by abstaining from a matter, a court will consider among the following factors: 1) the effect on the efficient administration of the bankruptcy estate; 2) the extent to which issues of state law predominate; 3) the difficulty or unsettled nature of the applicable state law; 4) comity; 5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 6) the existence of the right to a jury trial; and 7) prejudice to the involuntarily removed defendants.[11] *In re Donington,* 194 B.R. at 760 (citing *Balcor/Morristown Ltd. P'ship,* 181 B.R. at 793); *see also In re Strano,* 248 B.R. 493, 504 (Bankr.D.N.J. 2000).

The second, third, and fourth factors favoring discretionary abstention are met and require little elaboration. As previously indicated, all of the causes of action asserted by the parties involve either New Jersey statutory or common law claims.

---

11. MCFA removed the underlying action with the approval of Mid–Atlantic. Therefore, factor seven has no applicability to these two parties. Nonetheless, since MCFA filed a counterclaim against Maintainco, Maintainco is technically an "involuntarily removed" defendant in the underlying action. Because Maintainco is moving to remand the litigation to state court, the Court will assume for purposes of this Opinion that the arguments set forth by Maintainco in support of remanding the matter evidence "prejudice," thus satisfying factor seven.

No federal causes of action are implicated in the pleadings and diversity jurisdiction is lacking. While many of Maintainco's causes of action arguably do not present unsettled issues of state law, the underlying action does potentially involve complex legal issues arising under the New Jersey Franchise Practices Act. Without question, the state court of New Jersey is the most appropriate forum for interpreting the statute and applying it to the particular facts presented in the litigation. In addition, principles of comity influence this Court's respect for the state court's efforts to manage the case and lead to declining to exercise jurisdiction over the matter. *See Balcor/Morristown Ltd. P'ship,* 181 B.R. at 793.

With respect to the effect on the efficient administration of the estate, this Court concludes that the administration of Mid–Atlantic's estate will not be harmed by abstention of the underlying litigation. Rather, resolving the various state law claims "will be quicker in the forum where the process of adjudication is already well underway. Any task left over for the bankruptcy court will [only] be made simpler thereby." *Balcor/Morristown Ltd. P'ship,* 181 B.R. at 793.

The Court has already addressed factor number five, the degree of relatedness between the litigation and the main bankruptcy case. As stated in the analysis under § 157(b)(2), no substantive right under the Bankruptcy Code is at issue in the underlying litigation. The acts giving rise to Maintainco's lawsuit against MCFA and Mid–Atlantic involve pre-petition events alleging violations of state law. The only connection between the litigation and the Bankruptcy Code is the fact that Mid–Atlantic happened to file for relief under Chapter 11 during the pendency of the removed action. As such, the Court finds that the relationship between the litigation and Mid–Atlantic's bankruptcy case is too attenuated to warrant retaining jurisdiction under § 1334(c)(1).

With respect to factor six, the right to a jury trial, the parties disagree as to whether a jury trial is possible in the litigation given that the lawsuit was initially filed in the Chancery Division of the New Jersey Superior Court. Significantly, however, Maintainco demanded a jury trial in both its initial complaint and First Amended Complaint, and MCFA also demanded a jury trial in its answer and counterclaim to Maintainco's First Amended Complaint. (*See* Margolis Cert., Exhibits "2," "3," and "4"). Nonetheless, MCFA now claims the parties cannot obtain a jury trial under the New Jersey Franchise Practices Act, but concedes that this particular issue has not yet been squarely addressed by the New Jersey state courts. Moreover, MCFA also maintains that a jury trial is not available because "Maintainco's request for injunctive relief ... precludes a jury trial." (MCFA Br., pg. 25). This Court will not decide whether Maintainco can ultimately receive a jury trial in the Superior Court of New Jersey given the specific posture of this litigation. Such a decision is not critical to the Court's determination regarding discretionary abstention.

Based upon all of the foregoing, the Court finds equitable factors compel the conclusion that the remand of this action is appropriate under the doctrines of discretionary abstention and equitable remand, pursuant to 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b), respectively.

Finally, assuming, *arguendo,* that Maintainco's proof of claim is not allowed to be withdrawn and the reservation of rights is ineffective, and thus the underlying litigation is deemed a core proceeding, the Court believes, for all of the reasons set forth above, that discretionary abstention and equitable remand are still appropriate

under these circumstances. *See, e.g., In re Argus Group 1700, Inc.*, 206 B.R. 737, 748 (Bankr.E.D.Pa.1996), *aff'd* 206 B.R. 757 (E.D.Pa.1997).

### B. Maintainco's Request For A Determination That The Automatic Stay Does Not Apply To MCFA

Maintainco submits that as a non-debtor, MCFA is not entitled to the protections of the bankruptcy stay. (Maintainco Br., pg. 15). In contrast, MCFA contends that Maintainco's claims against it are subject to the bankruptcy stay because "unusual circumstances" exist in this case warranting its application to a non-debtor party. (MCFA Br., pg. 17).

Section 362 of the Bankruptcy Code provides in relevant part:

[A] petition filed ... under this title ... operates as a stay, applicable to all entities, of–

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim *against the debtor* that arose before the commencement of the case under this title ....

[11 U.S.C. § 362(a)(1) (1993)(emphasis added).]

■■■■ Without question, the scope of the automatic stay is broad. *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1203 (3d Cir.1991)(citing *Assoc. of St. Croix Condo., Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir.1982)). "All proceedings are stayed, including judicial proceedings. Proceeding in this sense encompasses civil actions ...." *Id.* However, although the scope of the automatic stay is broad, the explicit language of § 362(a) "indicates that it stays only pro-

ceedings *against* a 'debtor'—the term used by the statute itself." *Id.* (emphasis in original). Further, all proceedings in a single case are not lumped together for purposes of automatic stay analysis. *Id.* That is, "within a single case, some actions may be stayed, others not." *Id.* Especially in multiple claim and multiple party litigation, it is the function of the court to analyze each claim independently in determining whether the automatic stay should apply to that particular claim. *Id.* at 1204–05.

■■■■ The automatic stay is generally not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor. *Id.* at 1205 (citing *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1196–97 (6th Cir.1983)). This prohibition, however, has been liberalized in a minority of cases where courts have applied the automatic stay protection to non-debtor third parties. *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir.1997). Classifying such instances as "unusual circumstances," these courts have extended the stay to non-debtor third parties when two specific situations arise.

First, where there is such identity between the debtor and the non-debtor co-defendant that the debtor may be said to be the real party defendant and that a judgment against the non-debtor co-defendant will in effect be a judgment or finding against the debtor. *Id.* This exception has ordinarily been limited to proceedings against a third-party defendant who is entitled to absolute indemnity by the debtor on account of any judgment that might result against the non-debtor. *See, e.g., A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999–1000 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). Second, courts have also extended the stay

pursuant to the general equitable powers contained in 11 U.S.C. § 105(a) to non-debtor third parties where stay protection is essential to the debtor's efforts of reorganization. *McCartney,* 106 F.3d at 510. This exception has generally been limited to circumstances where principals or officers of a corporate entity have guaranteed the corporate debt. *See, e.g., In re Lazarus Burman Assocs.,* 161 B.R. 891, 899–900 (Bankr.E.D.N.Y.1993)(enjoining guaranty actions against non-debtor principals of debtor partnerships because principals were the only persons who could effectively formulate, fund, and carry out the debtor's plans of reorganization); *In re Nelson,* 140 B.R. 814, 816–17 (Bankr.M.D.Fla.1992)(enjoining actions against non-debtor guarantor of debtor's corporation's obligations where guarantor was President of the debtor and President's services, expertise and attention were essential to the reorganization of the debtor).

▮▮ The Court concludes that the circumstances of this case do not mandate that the benefit of Mid–Atlantic's automatic stay protection be extended to MCFA as a non-debtor co-defendant. While a similar legal and factual nexus exists between MCFA and Mid–Atlantic because the combination of their alleged improper conduct gave rise to the claims asserted by Maintainco against both entities, no "unusual circumstances" exist compelling this Court to extend stay protection to MCFA.

First, it cannot be said that within the context of the underlying litigation against both MCFA and Mid–Atlantic that Mid–Atlantic is the "real party defendant." To the contrary, based upon Maintainco's claims in the First Amended Complaint, while MCFA and Mid–Atlantic are crucial defendants to the action, Maintainco asserts distinct claims against MCFA existing independently of the claims brought forth against Mid–Atlantic. While the remedy Maintainco seeks, namely, a determination that its dealer agreement with MCFA is exclusive, would certainly affect the business of both MCFA and Mid–Atlantic, it cannot be said that this outcome alone warrants a finding extending the automatic stay to MCFA. In addition, the Court considers the second unusual exception to be lacking in this case. Although the dealer agreement might be considered an important asset of Mid–Atlantic's bankruptcy estate, this is not a situation where the principals of Mid–Atlantic have guaranteed their company's corporate debt or are required to indemnify the company for any potential losses. Therefore, this Court concludes that the automatic stay shall not be extended to MCFA as a non-debtor co-defendant in the underlying action.

**C. Maintainco's Request For A Determination That The Automatic Stay Should Be Lifted As to Mid–Atlantic**

Maintainco also seeks an order vacating the automatic stay so as to permit Maintainco to continue pursuing its claims against Mid–Atlantic in state court. Motions for relief from the automatic stay are guided by § 362(d) of the Bankruptcy Code, which provides in pertinent part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

[11 U.S.C. § 362(d)(1) (1993).]

▮▮ As evidenced by the foregoing provision, the Bankruptcy Code does not define the term "for cause," leaving courts

to "consider what constitutes cause based on the totality of the circumstances in each particular case." *In re Wilson*, 116 F.3d 87, 90 (3d Cir.1997)(citing *Trident Assocs. v. Metro. Life Ins. Co.*, 52 F.3d 127 (6th Cir.1995)). The term "cause" is viewed by many courts as a "broad and flexible concept." *In re The Score Bd., Inc.*, 238 B.R. 585, 593 (D.N.J.1999). A bankruptcy court is granted wide discretion to determine whether to lift an automatic stay for cause. *In re Rosen*, 208 B.R. 345, 356 (D.N.J. 1997).

 Although lack of adequate protection is the most common basis for granting relief from the automatic stay for "cause," other bases exist for finding "cause" as well. *In re Telegroup, Inc.*, 237 B.R. 87, 91 (Bankr.D.N.J.1999). Significantly, relief from the stay may be granted when it is "necessary to permit litigation to be *concluded* in another forum, particularly if the non-bankruptcy suit involves multiple parties or is ready for trial." *Id.* (citation omitted)(emphasis in original); *see also In re Kemble*, 776 F.2d 802 (9th Cir.1985). The legislative history to section 362(d)(1) supports this conclusion:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.
> [S.Rep. No. 95–989 at 50 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836.]

 In determining whether to grant relief from the automatic stay so as to permit a party in interest to continue prosecuting a matter in another forum, courts will often rely upon the following factors:

1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the debtor as a fiduciary; 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the debtor's insurer has assumed full responsibility for defending it; 6) whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the parties are ready for trial in the other proceeding; and 12) impact of the stay on the parties and the balance of the harms. *In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 165 (Bankr.D.Conn. 2002); *In re Curtis*, 40 B.R. 795, 799–800 (Bankr.D.Utah 1984)(utilizing same factors).[12] All twelve factors are not necessarily present in a particular case, and a court need not rely on any plurality of factors in deciding whether to lift the automatic stay. *In re Ice Cream Liquidation, Inc.*, 281 B.R. at 165.

 In this matter, the most relevant factors are one, seven, and ten. On balance, these factors point towards the granting of Maintainco's motion for relief from the automatic stay as to Mid–Atlantic. Permitting the state court litigation to proceed will result in a complete resolution of the issue of Mid–Atlantic's alleged liability to Maintainco. Further, the record before the Court suggests that permitting

12. MCFA concedes that factors three, five, eight, and nine are not applicable in this case. (MCFA Br., pg. 22). Further, the Court concludes that factor four is also not implicated in the present matter. Accordingly, the Court will not address these factors.

the state court action to proceed would not prejudice Mid–Atlantic's creditors since resolution of the issues before the state court must be addressed and damages, if any, fixed so that the extent of creditors' claims are known. Finally, for the reasons previously articulated, and based upon the circumstances of this case, the notion of judicial economy compels this Court to conclude that the stay should be lifted so as to permit the litigation to proceed in state court. Simply stated, the substantial time, effort, and resources already expended by the parties, Judge Escala, and the Discovery Master in moving this case closer to trial should not be interfered with by this Court. Therefore, pursuant to § 362(d)(1), this Court will lift the automatic stay for cause with respect to Mid–Atlantic and permit Maintainco to continue prosecuting its civil case against MCFA and Mid–Atlantic in the Superior Court of New Jersey.

### III. Conclusion

Based upon the foregoing, this Court will grant the forms of relief requested by Maintainco. Accordingly, this Court will abstain from adjudicating the removed litigation based upon the principles of mandatory, discretionary, and equitable abstention. The removed litigation is hereby remanded to the Superior Court of New Jersey, Chancery Division. In addition, the Court concludes that the automatic stay does not apply to MCFA as a non-debtor co-defendant, and Maintainco shall be granted relief from the automatic stay as to Mid–Atlantic in order to continue prosecuting its civil law claims against Mid–Atlantic in state court.

An accompanying Order is hereby entered.